UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN FARROW, et al.,

          Plaintiffs,

      v.

ROBIN LIPETZKY,

          Defendant.

Case No.  12-cv-06495-JCS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## I.  INTRODUCTION

Plaintiffs John Farrow ("Farrow") and Jerome Wade ("Wade") (collectively, "Plaintiffs") brought this putative class action against Defendant Robin Lipetzky, in her official capacity as the Contra Costa County Public Defender ("Defendant").  Plaintiffs allege causes of action (1) under 42 U.S.C. § 1983 for (a) violation of the Sixth Amendment to the United States Constitution; and (b) violations of the Fourteenth Amendment to the United States Constitution; (2) under the Bane Act for violation of their statutory speedy trial rights; and (3) for violation of California Government Code § 27706.  Plaintiffs claim that Defendant violated their rights by failing to provide counsel at Plaintiffs' initial appearance on criminal charges -- resulting in a continuance of the proceedings for appointment of counsel.  This case focuses on the constitutionality of that continuance:  may the Public Defender not provide counsel for appointment at an initial appearance, where the result is a continuance of the remainder of the arraignment 7 to 13 days for appointment of counsel?  This Order holds that, in the circumstances pleaded here, such a procedure is constitutional.

Presently before the Court is Defendant's Motion to Dismiss the Second Amended Complaint ("Motion").  A hearing was held on the Motion on July 26, 2013.  At the Court's request, the parties submitted supplemental briefing on August 2, 2013.  For the following reasons, the Motion is GRANTED.  Wade will be given leave to amend his Sixth Amendment

1    claim within the constraints set forth in this Order.  Farrow's federal claims are dismissed with

2    prejudice.  Plaintiffs' state law claims are dismissed without prejudice.[1]

3    **II.      BACKGROUND**

4         **A.      The May 8, 2013 Order Dismissing the Complaint Without Prejudice**

5              **1.      The Sixth Amendment Claim**

6         In the May 8, 2013 Order Dismissing the Complaint Without Prejudice ("Order"), the

7    Court found that the motion at issue raised two related questions:

> First, does the failure to provide counsel at an initial appearance (at which the only events that occur are the provision of a copy of the charges to the defendant, the inquiry as to whether the defendant desires appointed counsel, and the continuance of the matter to allow for appointment of counsel) violate the Sixth Amendment guarantee of counsel in a criminal case?  Second, where the matter is continued for 5 to 13 days, at which time counsel appears with the defendant, does the delay in appointment of counsel violate the Sixth Amendment?

Order, 1.  The Court answered both questions in the negative.  *Id.*

       First, the Court concluded that the Sixth Amendment right to counsel attached at the initial appearance because, on the facts alleged, that was when prosecution began as to each Plaintiff.  *Id.* at 13-14.  Second, the Court stated:  "Once the right to counsel attaches, the accused is entitled to appointed counsel during any 'critical stage' of the post-attachment proceedings."  *Id.* at 14 (citing *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 212, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008)). Third, the Court analyzed whether either (1) the initial appearance; or (2) the 5 to 13 day waiting period were, on the facts alleged, critical stages at which Plaintiffs were entitled to counsel.  *Id.* at 14-22.

       To begin its analysis, the Court noted that "[c]ourts decide whether a state criminal proceeding is critical by looking to the functions of the proceeding under state law."  *Id.* at 15 (citing *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)).  The Court stated that the Ninth Circuit has developed a three-factor test for determining whether a stage is critical.  *Id.* (citing *Menefield v. Borg*, 881 F.2d 696, 698-99 (9th Cir. 1989); *U.S. v. Benford*, 574

United States District Court
Northern District of California

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

F.3d 1228, 1232 (9th Cir. 2009)).  The Court described the test as follows:  "Any one of these three factors may be sufficient to make a stage critical:  (1) failure to pursue strategies or remedies results in a loss of significant rights; (2) skilled counsel would be useful in helping the accused understand the legal confrontation; and (3) the proceeding tests the merits of the accused's case." *Id*.  The Court reasoned that:  (1) because nothing happened at the initial appearance any failure to pursue strategies or remedies at that appearance did not result in a loss of significant rights; and (2) there was no legal confrontation or proceeding at which accused was unrepresented following the request for counsel.  *Id*. at 16-17.  The Court further concluded that the fact that, had counsel been appointed, counsel might have applied for a release on bail, caused a plea to be entered, or triggered statutory speedy trial rights did not change the analysis.  *Id*. at 17.  The Court distinguished cases, cited by Plaintiffs, in which pretrial liberty interests were adjudicated in the absence of counsel.  *Id*. at 19-20.

Next, the Court analyzed whether the five to thirteen day waiting period between the initial appearance, at which counsel was present, and the further arraignment, at which counsel was appointed, was a critical stage of the post-attachment proceedings.  *Id*. at 16-17, 20-22.  Although Plaintiffs did not allege that any event took place during the waiting period at which counsel would have been necessary, the court noted that *Rothgery* further requires the appointment of counsel a reasonable time prior to any critical stage after attachment to allow adequate representation at that critical stage.  *Id*. at 16-17, 20.  However, the Court stated that Plaintiffs had not alleged that they were prejudiced, or impeded, at any later critical stages by the absence of counsel during the five-to-thirteen day waiting period.  *Id*. at 22.

Based on all of the above, the Court dismissed Plaintiffs' Sixth Amendment claim, on the facts alleged, with leave to amend.  *Id*. at 22.

### 2.    Fourteenth Amendment Claims Predicated on a Violation of State Statutory Speedy Trial Rights

The Court concluded that Plaintiffs had not alleged a violation of their state speedy trial rights because the facts alleged were consistent with the requirements of California Penal Code §§ 859b, 1049.5, and 1382.  *Id*. at 27.  Further, the Court found that, on the facts alleged, the

United States District Court
Northern District of California

3

1    procedures of § 1050 were not triggered.  *Id.*  Accordingly, the Court dismissed Plaintiffs'

2    Fourteenth Amendment claims predicated on a violation of their state statutory speedy trial rights

3    with leave to amend.  *Id.* at 28.

4              **3.        State Law Claims**

5              After dismissing Plaintiffs' remaining federal cause of action, which has been replaced

6    with a different federal cause of action in Plaintiffs' Second Amended Complaint ("SAC"), the

7    Court declined to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims.

8    *Id.* at 31-32.

9         **B.        The Second Amended Complaint**

10             Pursuant to a now discontinued practice, Defendant withheld legal representation to all

11   indigent, in-custody, criminal defendants for a period of 5 to 13 days after their initial Court

12   appearance, and sometimes longer.  SAC, ¶¶ 1-2.[2]  At the first court appearance, dubbed

13   "arraignment," no plea is taken, bail is set without consideration of the favorable information

14   counsel would ordinarily provide to the court regarding the criminal defendant's circumstances,

15   the case is referred to the probation department for an evaluation concerning bail, and counsel is

16   not appointed as required by California law.  *Id.* at ¶ 3.  The probation department's evaluation

17   and report is based entirely upon information provided by government sources.  *Id.*  An indigent

18   criminal defendant's request for court-appointed counsel triggers referral to the Public Defender

19   and an automatic continuance for "further arraignment."  *Id.* at ¶ 4.  Criminal defendants are not

20   apprised of their statutory speedy trial rights prior to the automatic continuance in violation of

21   California law.  *Id.* at ¶ 6.  Good cause for continuance is never shown as required by California

22   Penal Code § 1050.  *Id.*  This thwarts the intent of the California legislature's statutory speedy trial

23   scheme, which requires that in-custody criminal defendants receive probable cause determinations

24   through a preliminary hearing at the earliest time possible to protect their crucial liberty interest.

25   *Id.* at ¶ 7.

26             Turning to Plaintiffs, Farrow was arrested on August 30, 2011.  *Id.* at ¶ 28.  He appeared

27

28   _____
     [2] The SAC makes distinct allegations concerning the treatment of in custody felony defendants and in custody
     misdemeanor defendants.  The SAC does not specify to which group Plaintiffs belong.

4

alone in court for his arraignment on September 2, 2011. *Id*. at ¶ 29. The court asked him if he could afford counsel, and he replied that he could not. *Id*. at ¶ 30. The court then asked him if he wanted the court to appoint counsel, and he said that he did. *Id*. The court set bail, referred the matter to the Public Defender, and continued the matter to September 15, 2011 for "further arraignment" without advising Farrow of his right to a prompt arraignment, his right to bail, or his right to a speedy preliminary hearing and trial. *Id*. Farrow languished in jail, without meaningful examination of bail, the protection of statutory speedy trial rights, or legal representation, for thirteen days. *Id*. Also at his September 2, 2011 arraignment, the court referred the matter for a bail study. *Id*. at ¶ 31. The bail study was conducted between Farrow's first and second court appearances and, because Farrow was not represented by counsel, there was no means for the probation department to include any favorable information in the highly influential report. *Id*. at ¶ 31.

At the further arraignment held 16 days after his arrest and 13 days after his first court appearance, counsel was appointed for Farrow and he was permitted to enter a plea. *Id*. at ¶ 32. He immediately asserted his right to a speedy preliminary hearing and his preliminary hearing was held on September 27, 2011. *Id*. at ¶ 33. As a result of the delay in the appointment of counsel, Farrow's counsel had 13 less days than the prosecutor to prepare for the preliminary hearing. *Id*. at ¶ 34.

Wade was arrested at his high school on November 8, 2011 when he was 17 years old. *Id*. at ¶ 35. He appeared in Court alone for his arraignment on November 14, 2011 after being held illegally in violation of California Penal Code § 825. *Id*. at ¶¶ 36-37. Wade was unaware of this violation of his rights. *Id*. at ¶ 37. The county prosecutor appeared at Wade's first appearance. *Id*. at ¶ 38. The proceedings at Wade's first appearance progressed in the same fashion as Farrow's, and the matter was continued to November 21, 2011 for further arraignment. *Id*. at ¶ 39. Also, as with Farrow, a bail study was ordered and Wade was unable to supply favorable information because he did not have counsel. *Id*. at ¶ 40. Wade languished in jail for the following 7 days without examination of bail, the protection of statutory speedy trial rights, or legal representation. *Id*. at ¶ 39. During that time, the police investigation was ongoing and the

district attorney was hard at work on his case.  *Id.* at ¶ 42.  On November 18, 2011, the district attorney filed an amended complaint, amending the complaint filed on November 10, 2011, adding an additional fifteen charges and enhancements, greatly increasing Wade's exposure.  *Id.* at ¶¶ 41, 43.  The prosecution was able to file the amended complaint as a matter of right because Wade had not yet entered a plea as a result of Defendant's policy.  *Id.* at ¶ 43.

Counsel was appointed for Wade at his further arraignment on November 21, 2011, 13 days after his arrest and 7 days after his first appearance as a juvenile charged as an adult.  *Id.* at ¶ 44.  At that time, his counsel began reviewing approximately 600 pages of discovery.  *Id.* at ¶ 45. In that process, counsel eventually became aware of a potential *Miranda* issue.  *Id.*  Because Wade had been interrogated in front of his high school principal, Wade's counsel obtained an investigative authorization and dispatched an investigator to interview the principal about the interrogation.  *Id.*  At the interview, held on November 28, 2011, the principal maintained that she could no longer remember when or how Wade was *Mirandized*.  *Id.*[3]

On the basis of the foregoing allegations, Plaintiffs allege six causes of action, as follows:

(1)    Violation of the Sixth Amendment of the United States Constitution Pursuant to 42 U.S.C. § 1983:  Plaintiffs allege that Defendant's failure to represent them at their first appearance, or a reasonable time thereafter, as a matter of policy, violated their Sixth Amendment right to the assistance of court-appointed counsel.  *Id.* at ¶ 57.  Plaintiffs allege that they were directly and proximately damaged and are entitled to recover nominal damages.  *Id.*

(2)    Violation of the Fourteenth Amendment of the United States Constitution – substantive due process with respect to statutory speedy trial rights:  Plaintiffs allege that Defendant's policy violated the due process clause of the Fourteenth Amendment because it deprived them of their statutory speedy trial rights without a hearing to determine the cause or reasonableness of the denial.  *Id.* at ¶ 60.  They seek nominal damages.  *Id.*  Plaintiffs specify that their speedy trial plains rely on California Penal Code §§ 825, 859b, and 1050, specifically, but not exclusively, and on the legislative intent supporting California's statutory speedy trial scheme.

_____

[3] In addition to the allegations pertaining to Plaintiffs, the SAC contains allegations concerning the putative class they represent.

United States District Court
Northern District of California

1   *Id*. at ¶ 10.

2          (3)     Violation of the Fourteenth Amendment of the United States Constitution –

3   procedural due process with respect to statutory speedy trial rights:  Plaintiffs repeat the

4   allegations in their second cause of action.  *Id*. at ¶ 63.

5          (4)     Violation of the Equal Protection Clause of the Fourteenth Amendment of the

6   United States Constitution:  Plaintiffs allege that Defendant's policy denied them their right to a

7   prompt arraignment, their right to assistance of counsel, and their statutory speedy trial rights on

8   the basis of their indigence because similarly situated criminal defendants who could afford

9   private counsel were furnished prompt arraignments, were permitted to enter pleas at their first

10  appearance, were allowed to influence the probation department with favourable information

11  concerning bail in the days following arraignment, were immediately able to apply for bail, and

12  were immediately able to assert their statutory speedy trial rights and begin trial preparation.  *Id*. at

13  ¶ 66.  Plaintiffs seek nominal damages.  *Id*.

14         (5)     California Civil Rights Act, Civil Code §§ 52 and 52.1 – denial of statutory speedy

15  trial rights:  Plaintiffs allege that Defendant's policies forced them to sacrifice their speedy trial

16  rights as a precondition to appointment of counsel, entitling them to a minimum of $4,000.  *Id*. at ¶

17  69.

18         (6)     California Code of Civil Procedure §§ 1085 and 1086 – writ of mandate to enforce

19  California Government Code § 27706:  Plaintiffs allege that Defendant's policies violate

20  California Government Code § 27706, which requires the public defender to represent criminal

21  defendants at all stages of the proceedings, and seek a writ of mandate compelling Defendant to

22  represent all indigent, in custody defendants at the first appearance or a reasonable time thereafter.

23  *Id*. at ¶ 72.

24         **C.      The Motion**

25         Defendant argues that Plaintiffs have failed to rectify the deficiencies in their Complaint.

26  Motion, 4.  First, Defendant argues that there has been no violation of the Sixth Amendment's

27  right to assistance of counsel.  Motion, 4-9.  Defendant states that Article I, section 14 of the

28  California Constitution, which governs arraignments in felony prosecutions, provides in relevant

part: "The magistrate shall immediately give the defendant a copy of the complaint, inform the

defendant of the defendant's right to counsel, allow the defendant a reasonable time to send for

counsel, and on the defendant's request read the complaint to the defendant." *Id*. at 4-5.

Defendant asserts that the SAC is predicated on an alleged failure to provide counsel at a non-

critical stage. *Id*. at 5.  In that instance, they argue that Plaintiffs must show prejudice to their

substantive rights as a result of the absence of counsel. *Id*. (citing *McNeal v. Adams*, 623 F.3d

1283, 1288 (9th Cir. 2010)).  Defendant contends that Plaintiffs cannot do so. *Id*.  In that vein,

Defendant argues that Plaintiffs cannot plausibly suggest that their lack of input into the bail

studies caused them prejudice as they would have been able to raise any bail rights at a subsequent

bail hearing. *Id*. at 5-6 (citing Cal. Penal Code § 1270.1(b)-(c); *State of New Jersey v. Anthony

Fann*, 239 N.J.Super. 507, 517-18, 520-21, 571 A.2d 1023 (1990)).  Moreover, Defendant argues

that none of the allegations specific to Wade plausibly states a claim of prejudice. *Id*. at 7-9.

Second, Defendant argues that Plaintiffs cannot demonstrate that any of their state

statutory speedy trial rights because (1) the Court held in its previous Order that Plaintiffs' did not

allege a violation of California Penal Code § 859b because Plaintiffs did not allege that a

preliminary examination was not held within 10 court days of the date they were arraigned or pled,

whichever occurs later; (2) the Court held in its previous Order that California Penal Code § 1050

lacks the mandatory language to create a liberty interest protected by the Fourteenth Amendment;

and (3) California Penal Code § 825 does not mandate dismissal in the event of a violation. *Id*. at

9-10.  As to § 825, Defendant also argues that she had no control over the time when Plaintiffs

were initially brought before the magistrate. *Id*. at 10.  Moreover, Defendant contends that § 825

does not mandate that arraignment be completed when the criminal defendant is first brought

before the magistrate. *Id*.

Third, Defendant argues that Plaintiffs cannot establish a violation of the Fourteenth

Amendment based on the Equal Protection Clause because Defendant does not represent

individuals who can afford counsel with the exception of capital defendants and because a single

policy that does not distinguish between classes of individuals cannot support an equal protection

claim. *Id*. at 10-11.

Fourth, Defendant contends that Plaintiffs remaining state law claims should be dismissed without prejudice for lack of subject matter jurisdiction.  *Id*. at 11.  In the alternative, Defendant argues that the state law claims are without merit because (1) Plaintiffs have failed to allege any violation of their state speedy trial rights; and (2) Defendant complies fully with the directive of California Government Code § 27706(a) to defend "[u]pon request of the defendant or upon order of the court."  *Id*. at 11-12.

**D.       The Opposition**

First, Plaintiffs argue that Defendant's policy is unconstitutional because counsel is required at all critical stages, and arraignment is a critical stage in California.  Plaintiffs' Response in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss the Second Amended Complaint ("Opposition"), 2.  Plaintiffs contend that the Court erroneously overruled California law in its previous Order by concluding that the initial appearance, including the initial portions of the arraignment, is not a critical stage.  *Id*.  Plaintiffs begin by stating that critical stages are specific to the jurisdiction, not to the defendant.  *Id*. at 5 (citing *Hamilton*, 368 U.S. at 54, 82 S.Ct. 157, 7 L.Ed.2d 114).  Plaintiffs further state that considerations regarding a specific defendant come into play only when considerations of prejudice – in addition to the denial of counsel at a "critical stage" – may be required to reverse a conviction.  *Id*. at 5.  Plaintiffs contend that any analysis of prejudice is irrelevant to a civil action brought under § 1983.  *Id*.  Plaintiffs note that numerous California courts have held that arraignment is a critical stage of the criminal proceedings entitling the accused to an attorney, although the absence of counsel may not be such a grievous error that it compels reversal of a conviction without showing of prejudice.  *Id*. at 7 (collecting cases, including *People v. Cox*, 193 Cal.App.3d 1434, 1440, 239 Cal.Rptr. 40 (1987)).  In addition to their argument that California precedent compels the conclusion that the arraignment is a critical stage in the proceedings, Plaintiffs assert that arraignment is a critical stage because detainees would benefit from guidance to avoid a forced continuance and because custody status is initially determined.  *Id*. at 8-9.  However, Plaintiffs decline to re-litigate whether arraignment is a critical stage of the proceedings in California.  *Id*. at 9.

As to the waiting period, Plaintiffs state that *Rothgery* "point[s] the way" to the conclusion

1   that counsel must be appointed "on the heels of the first appearance." *Id*. at 10-11 (citing

2   *Rothgery*, 554 U.S. at 203-05, 128 S.Ct. 2578, 171 L.Ed.2d 366. Plaintiffs assert that each of the

3   three district court opinions interpreting *Rothgery* are inapposite. *Id*. at 10.

4          Moreover, Plaintiffs argue that the Court erred in concluding that the portions of the

5   arraignment that took place without the presence of counsel were not a critical stage of the

6   proceedings in themselves. *Id*. at 11-14. Plaintiffs state that the Sixth Amendment requires

7   counsel to be provided at every stage of a criminal proceeding where substantial rights of a

8   criminal accused may be affected. *Id*. at 11 (citing *McNeal*, 623 F.3d at 1286). Plaintiffs state that

9   prejudice is irrelevant to the determination of whether the stage is critical. *Id*. Plaintiffs argue that

10  the Court erroneously relied on *Benford*, because *Benford* is distinguishable based on its reliance

11  on the reversible per se standard as opposed to narrower question of harmless error. *Id*. at 2-3

12  (citing *Benford*, 574 U.S. at 1233 ("[W]e do not hold that a status conference never can be a

13  critical stage, but only that this one was not. Additionally, because we address here only

14  Defendant's claim that the absence of his counsel at the status conference constitutes per se

15  ineffective assistance of counsel, he may bring all other claims in a habeas proceeding, the validity

16  of which we do not consider here")). In any event, to the extent that a showing of prejudice is

17  required, Plaintiffs contend that they have alleged prejudice. *Id*. at 14.

18         Second, Plaintiffs argue that Defendant violated the Fourteenth Amendment by

19  deliberately failing to assert their state statutory speedy trial rights. *Id*. at 14-18. Plaintiffs

20  contend that the Court overlooked the fact that the core value protected by California's speedy

21  trial scheme is time, and that once lost it can never be recovered. *Id*. at 14. Moreover, Plaintiffs

22  assert that the legislative intent behind the speedy trial statutes dictates that they be read as a

23  whole in light of their goal of preventing prolonged incarceration prior to a preliminary hearing.

24  *Id*. at 14-17 (citing *People v. Kowalski*, 196 Cal.App.3d 174, 178, 242 Cal.Rptr. 32 (1987); *In re*

25  *Samano*, 31 Cal.App.4th 984, 989-90, 37 Cal.Rptr.2d 491 (1995); *Sykes v. Superior Court*, 9

26  Cal.3d 83, 88, 106 Cal.Rptr. 786, 507 P.2d 90 (1973); *People v. Martinez*, 22 Cal.4th 750, 768 n.1,

27  94 Cal.Rptr.2d 381, 996 P.2d 32 (2000); *People v. Valencia*, 82 Cal.App.4th 139, 144-45, 98

28  Cal.Rptr.2d 37 (2000)). Plaintiffs state that a criminal defendant's right to a speedy trial may be

United States District Court
Northern District of California

10

denied by the failure of the state to provide public defenders so that an indigent must choose between his right to a speedy trial and his right to representation by counsel.  *Id*. at 16 (citing *People v. Johnson*, 26 Cal.3d 557, 571, 162 Cal.Rptr. 431, 606 P.2d 738 (1980)).  Plaintiffs contend that Defendant subverted the statutory scheme by failing to appear at the initial appearance.  *Id*. at 17-18.

Third, Plaintiffs contend that they have stated a claim under the equal protection clause. *Id*. at 18-19.  Plaintiffs argue that the state cannot justify, in the face of strict scrutiny, a policy that denies speedy trial rights to indigent people.  *Id*. at 18-19 (citing *Barsamyan v. Appellate Div. of Superior Court of Los Angeles Cnty.*, 44 Cal.4th 960, 981-82, 81 Cal.Rptr.3d 265, 189 P.3d 271 (2008); *Young v. Gnoss*, 7 Cal.3d 18, 28, 101 Cal.Rptr. 533, 496 P.2d 445 (1972); *People v. Olivas*, 17 Cal.3d 236, 251, 131 Cal.Rptr. 55, 551 P.2d 375 (1976); *Evitts v. Lucey*, 469 U.S. 387, 403-04, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)).

### E.    The Reply

Defendant begins with Plaintiffs' Sixth Amendment claim.  Reply Brief of Defendant in Support of Motion to Dismiss Second Amended Complaint ("Reply"), 3-7.  Defendant notes that the Court did not hold in its prior Order that arraignment under California law is not a critical stage.  *Id*. at 4 n.3.  Indeed, Defendant concedes that the second appearance wherein arraignment was completed was a critical stage.  *Id*. at 5 n.4.  Regardless, Defendant states that the initial appearance was not a critical stage for the reasons set out in the Court's prior Order.  *Id*. at 4. Defendant argues that Plaintiffs have not identified any contrary authority.  *Id*. at 4-5 (collecting and distinguishing cases).  Because counsel was present at all critical stages, Defendant asserts that Plaintiffs' were required to plead factual allegations to support the inference that the absence of counsel until the second appearance resulted in prejudice to their criminal cases to plead a violation of the Sixth Amendment.  *Id*. at 6-7 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 147, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *Hovey v. Ayers*, 458 F.3d 892, 904 (9th Cir. 2006); *McNeal*, 623 F.3d at 1288-89).

Next, Defendant addresses the statutory speedy trial claim.  *Id*. at 7-9.  Defendant argues that Plaintiffs cannot rely on California Penal Code §§ 859b and 1050 for the reasons set out in the

United States District Court
Northern District of California

Court's prior Order. *Id*. at 7. Defendant contends that Plaintiffs cannot rely on § 825 because they have not adequately alleged a violation of that section and because it does not mandate dismissal in the event of a violation. *Id*. Defendant notes that Plaintiffs argument relies, to some extent, on the intent of the legislature. *Id*. at 7-8. Defendant asserts that the history of California Penal Code § 1382 demonstrates that the legislature intended to permit delays such as the one in this case. *Id*. at 8. Defendant states that § 1382(a)(2) provides speedy trial protections that, since 1965, have been triggered by the date the criminal defendant is arraigned. *Id*. Prior to 1965, the statute had used at least two different triggers. In 1977, a California Court of Appeal held that a multiple hearing arraignment was not concluded for the purposes of § 1382 until the criminal defendant was asked to plea. *Id*. (citing *Valdes v. Municipal Court*, 69 Cal.App.3d 434, 435-39, 138 Cal.Rptr. 50 (1977)). Thereafter, the legislature amended § 1382 but retained the arraignment trigger. *Id*. (citing *People v. Baca*, 211 Cal.App.3d 675, 678, 259 Cal.Rptr. 566 (1989)).

Turning to the equal protection clause argument, Defendant contends that Plaintiffs rely on an underlying violation of their speedy trial rights. *Id*. at 9-10. Because Defendant argues that there was no such violation, Defendant asserts that the equal protection clause claim fails. *Id*. at 10.

Having addressed all federal claims, Defendant argues that the remaining state law claims should be dismissed without prejudice for lack of subject matter jurisdiction. *Id*. at 10-11.

### F.   Supplemental Briefing

At the July 26, 2013 hearing, the Court requested supplemental briefing to address the recent Ninth Circuit opinion in *Lopez-Valenzuela v. County of Maricopa*, __ F.3d __, 2013 WL 2995220 (9th Cir. June 18, 2013), which is discussed in more detail below. Defendant argues that the *Lopez-Valenzuela* decision, and its underlying logic, supports the ruling in the prior Order. Defendant's Supplemental Brief in Support of Motion ("Defendant's Supplemental"), 3.[4]

---

[4] Defendant also uses the supplemental brief as a vehicle to press arguments concerning Wade's potential ability to allege prejudice if he is given leave to amend. Defendant's Supplemental, 3-5. The Court did not invite further argument on that issue, and Plaintiffs, properly understanding the Court's request, did not address the issue in their supplemental brief. The Court does not consider these additional arguments Defendant raises in her supplemental brief.

Plaintiffs argue that *Lopez-Valenzuela* is distinguishable. The foundation of Plaintiffs' argument is that the Arizona procedure in *Lopez-Valenzuela* was held in accordance with the statutory design, whereas the initial appearance in this case should have been a complete arraignment in accordance with California law. Plaintiffs' Supplemental Brief re: *Lopez-Valenzuela v. County of Maricopa* ("Plaintiffs' Supplemental"), 4-9. Plaintiffs distinguish the initial appearances at issue in *Lopez-Valenzuela* from arraignment in California. *Id.* at 4. Plaintiffs do not dispute that the Arizona legislature can provide for an initial appearance as described in *Lopez-Valenzuela*, or that counsel would not be required at such an appearance. *Id.* at 4-5. Instead, Plaintiffs argue that Defendant usurped the role of the legislature by bifurcating the California arraignment proceedings to impose an Arizona-style initial appearance. *Id.* at 4-5, 9.

III.   **ANALYSIS**

A.   **Legal Standard**

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).

Generally, the plaintiff's burden at the pleading stage is relatively light. Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The factual allegations must be definite enough to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955, 167 L.Ed.2d 929. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1 recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556

2 U.S. at 663, 129 S.Ct. 1937, 173 L.Ed.2d 868.

3    **B.    42 U.S.C. § 1983**

4        42 U.S.C. § 1983 provides a cause of action against any person who, under color of state

5 law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws

6 of the United States. § 1983 is not a source of substantive rights, but merely a method for

7 vindicating federal rights established elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94, 109

8 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To state a claim for a violation of § 1983, a plaintiff must

9 allege a deprivation of a constitutional right by a government official acting "under color of state

10 law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

11        Plaintiffs sufficiently allege that Defendant, sued in her official capacity as the Public

12 Defender for Contra Costa County, acted "under the color of state law." *See Am. Mfrs. Mut. Ins.*

13 *Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (allegations against public

14 officials satisfy the state action requirement); *Miranda v. Clark County*, 319 F.3d 465, 469-71 (9th

15 Cir. 2003) (Public Defender is a state actor for the purposes of § 1983 when acting solely as the

16 administrative head of the agency, on behalf of the county, in determining how the overall

17 resources of the Public Defender's office will be spent).

18        "[A] local government body may be liable if it has a policy of inaction and such inaction

19 amounts to a failure to protect constitutional rights. [Citation]. However, the policy of inaction

20 must be more than mere negligence, [citation]; it must be a conscious or deliberate choice among

21 various alternatives. [Citation]." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quoting

22 *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004)); *see also Oviatt v. Pearce*, 954 F.2d 1470, 1474

23 (9th Cir. 1992). To impose liability based on a policy of deliberate inaction, the "plaintiff must

24 establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the

25 municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

26 constitutional right; and (4) that the policy [was] the moving force behind the constitutional

27 violation." *Oviatt*, 954 F.3d at 1474 (internal quotations omitted).

28 //

C.      **Sixth Amendment Right to Counsel**

As discussed below, Plaintiffs have not alleged facts that show a violation of their Sixth Amendment right to counsel.  Accordingly, Defendant's Motion to dismiss their first cause of action, asserting a § 1983 claim for a violation of that right, is granted.  Farrow's Sixth Amendment claim is dismissed with prejudice.  Wade's Sixth Amendment claim is dismissed with leave to amend within the constraints set forth below.

1.      **Background Law**

a.      **Attachment**

The Sixth Amendment right to counsel in criminal prosecutions attaches when prosecution begins.  *Rothgery*, 554 U.S. at 198-99, 128 S.Ct. 2578, 171 L.Ed.2d 366 (citing *McNeil* v. *Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)).  Prosecution begins with the initiation of adversarial judicial criminal proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Id*. at 198-99 (quoting *United States* v. *Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984)).  Federal law determines what suffices as a commitment to prosecute for purposes of the attachment of the right to counsel.  *Id*. at 207 (citing *Moran,* 475 U.S. at 429, n. 3 ("[T]he type of circumstances that would give rise to the right would certainly have a federal definition").  The right to counsel attaches at the initial appearance before a judicial officer, which is generally the hearing at which "the magistrate informs the defendant of the charge in the complaint, and of various rights in further proceedings," and "determine[s] the conditions for pretrial release."  *Id*. (citing 1 W. LaFave, J. Israel, N. King, & O. Kerr, Crim. P. § 1.4(g), p 135 (3d ed. 2007)).

b.      **Critical Stage Determination**

Once the right to counsel attaches, the accused is entitled to appointed counsel during any "critical stage" of the post-attachment proceedings.  *Rothgery*, 554 U.S. at 212, 128 S.Ct. 2578, 171 L.Ed.2d 366.  "[C]ourts are 'require[d] … to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.'"  *Musladin v. Lamarque*, 555 F.3d 830, 836 (9th Cir. 2009) (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)); *see also Benford*, 574 F.3d at 1232.

A critical stage is a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Hovey*, 458 F.3d at 901 (quoting *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)). While there is no definitive list of critical stages, decisions of the United States Supreme Court identify certain stages as critical. *See Iowa v. Tovar*, 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (entry of a guilty plea); *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (sentencing); *United States v. Wade*, 388 U.S. 218, 236-37, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (post-indictment lineup). Case law also illustrates stages that are not critical. *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (taking a handwriting sample); *United States v. Ash*, 413 U.S. 300, 321, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (post-indictment photo lineup); *Hovey*, 458 F.3d at 902 (mid-trial hearing on the competency of defendant's lawyer).

Courts decide whether a state criminal proceeding is critical by looking to the functions of the proceeding under state law. *See Hamilton*, 368 U.S. at 54, 82 S.Ct. 157, 7 L.Ed.2d 114 ("Whatever may be the function and importance of arraignment in other jurisdictions, we have said enough to show that in Alabama it is a critical stage in a criminal proceeding"); *see also United States ex rel. Cooper v. Reincke*, 333 F.2d 608, 612 (2d Cir. 1964) ("The Connecticut hearing in probable cause cannot, therefore, be characterized as critical as is arraignment in Alabama").

The Ninth Circuit has developed a three-factor test for determining whether a stage is critical. *Menefield*, 881 F.2d at 698-99; *Benford*, 574 F.3d at 1232; *McNeal v. Adams*, 623 F.3d at 1289. Any one of these three factors may be sufficient to make a stage critical: (1) failure to pursue strategies or remedies results in a loss of significant rights; (2) skilled counsel would be useful in helping the accused understand the legal confrontation; and (3) the proceeding tests the merits of the accused's case. *Menefield*, 881 F.2d at 699; *Hovey*, 458 F.3d at 901-02. In reviewing the plaintiff's lack of counsel at a motion for a new trial, the *Menefield* court considered the substantive rights in question and whether the presence of counsel would have helped the defendant enforce those rights. *Id.*

First, Plaintiffs argue that there is a distinction between a "critical stage" where counsel is

16

required by the Sixth Amendment and a critical stage where, pursuant to *Cronic*, prejudice is presumed where counsel is absent.  Opposition, 12-14.  Plaintiffs argue that the Ninth Circuit's three factor test only applies in the latter situations.  *Id*. at 13 (citing *McNeal*, 623 F.3d at 1289-90 (Berzon, J., concurring in the judgment)).  In *McNeal*, the majority opinion set out to clarify the difference between a stage at which the defendant has a right to counsel and a critical stage requiring per se reversal if counsel is absent.  *See McNeal*, 623 F.3d at 1285.  Without clearly delineating the analysis, the *McNeal* majority first held that the proceeding at issue was not a critical stage because it involved no "significant consequences" to the defendant's case.  *Id*. at at1288.  The *McNeal* majority proceeded to conclude that the proceeding at issue was not a *Cronic* critical stage applying the above-referenced three factor test.  *Id*. at 1289.  The concurring opinion relied on *Hovey* in criticizing the majority for applying a "significant consequences" test as opposed to determining whether the proceeding was "any stage of a criminal proceeding where substantial rights of a criminal accused may be affected."  *Id*. at 1289-90.  *Hovey* stated as follows:

> We reject Hovey's claim that his Sixth Amendment right to counsel was violated because he was represented only by conflicted counsel, and thus effectively unrepresented, during the competency hearing.  The right to counsel, and the "correlative right" to unconflicted counsel, [citation], attach at all critical stages of a criminal prosecution.  *See, e.g.*, *United States v. Wade*, 388 U.S. 218, 224-25, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).  A critical stage is any "stage of a criminal proceeding where substantial rights of a criminal accused may be affected."  *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *see also Bell v. Cone*, 535 U.S. 685, 696, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (defining a critical stage as "a step of a criminal proceeding, such as arraignment, that [holds] significant consequences for the accused").
>
> On the basis of Supreme Court precedent, principally *Mempa* and *United States v. Ash*, 413 U.S. 300, 309, 313, 93 S.Ct. 2568, 27 L.Ed.2d 619 (1973), we have distilled a three-factor test for determining what constitutes a critical stage.  We consider whether:  (1) "failure to pursue strategies or remedies results in a loss of significant rights," (2) "skilled counsel would be useful in helping the accused understand the legal confrontation," and (3) "the proceeding tests the merits of the accused's case."  *Menefield v. Borg*, 881 F.2d 696, 698-99 (9th Cir. 1989).  The presence of any of these factors may be sufficient to render a stage in the proceedings "critical."  *Cf. Ash*, 413 U.S. at 313, 93 S.Ct. 2568 (noting that the relevant inquiry is "whether the accused require[s] aid in coping with legal problems *or* assistance in meeting his adversary") (emphasis added)).

Based on the specific facts of this case, we conclude that the attorney competency hearing …

*Hovey*, 458 F.3d at 901-902.  The clear import of *Hovey* is that a proceeding is only a critical stage wherein the right to counsel attaches if at least one of the three factors set forth in *Menefield* is present.  *See also Menefield*, 881 F.2d at 698-99 (deriving the three factor test to determine whether the hearing at issue was a critical stage at which the Sixth Amendment provision of effective assistance of counsel applied); *Benford*, 574 F.3d at 1232.

More recent Ninth Circuit precedent continues to apply the three-factor test to determine whether state court criminal proceedings "are critical stages that trigger the Sixth Amendment Right to Counsel."  *See Lopez-Valenzuela*, __ F.3d __, 2013 WL 2995220, at *11.  In accordance with the decisions running from *Menefield* to *Lopez-Valenzuela*, the Court concludes that the three-factor test set forth above is properly applied in determining whether a particular state court criminal proceeding is a "critical stage[] that trigger[s] the Sixth Amendment right to counsel."  *Id.*

Second, Plaintiffs contend that the Court should not apply the Ninth Circuit's three-factor test to the state procedures in this case because California courts have already determined that arraignment is a critical stage in the proceedings.[5]  The Court agrees that arraignment is a critical stage of the proceedings.  Nothing in its prior Order is to the contrary.  However, on the facts alleged, counsel was requested immediately after arraignment began and no further arraignment proceedings were undertaken until counsel was present, at which time the arraignment was completed.  *See* Order, 15-16; Cal. Penal Code § 988; *Chartruck v. Municipal Court*, 50 Cal.App.3d 931, 123 Cal.Rptr. 816 (1975) (holding that arraignment is complete when the court asks the defendant whether he pleads guilty or not guilty, rejecting decisions holding that arraignment is complete upon entry of plea).

The cases on which Plaintiffs rely do not shed any light on whether the initial appearance

_____

[5] Plaintiffs implicitly contend that the question of whether a proceeding in California is a critical stage for the purposes of the Sixth Amendment is a question of state law.  They are incorrect.  Federal principles govern the inquiry concerning whether a state procedure is a critical stage.  *See, e.g.*, *Musladin*, 555 F.3d at 839-43; *Benford*, 574 F.3d at 1232 n.2 (noting that *Musladin* applied a more general formulation of the three-part test applied in the Ninth Circuit, but stating that *Musladin* did not amount to a departure from that test).  Of course, the analysis is specific to the state procedure.

United States District Court
Northern District of California

in the present case, which did not include the entirety of the arraignment, was a critical stage of the proceedings.  *See Cox*, 193 Cal.App.3d at 1440, 239 Cal.Rptr. 40 (at the arraignment the criminal defendant waived the reading of the information and the right to a speedy trial and entered a plea of not guilty to all counts); *In re Johnson*, 62 Cal.2d 325, 328-29, 42 Cal.Rptr. 228, 398 P.2d 420 (1965) (criminal defendant entered guilty plea at arraignment without counsel and was sentenced immediately after the other matters on the court's calendar for the day had been attended to); *Ingram v. Justice Court*, 69 Cal.2d 832, 835, 838, 73 Cal.Rptr. 410, 447 P.2d 650 (1968) (holding that the public defender's determination that a person is indigent is not subject to judicial review where trial court refused to allow the public defender to represent the petitioner seeking to set aside an eight-year-old conviction on the ground; stating in dicta that in the hypothetical situation where a defendant seeks out the public defender for assistance prior to his first court appearance the period preceding arraignment is a stage that is often of critical importance); *People v. Viray*, 134 Cal.App.4th 1186, 1190, 36 Cal.Rptr.3d 693 (2005) (interrogation by prosecutor on the morning of criminal defendant's arraignment violated the Sixth Amendment right to counsel but was insufficient to justify reversal); *Phillips v. Seely*, 43 Cal.App.4th 104, 117 Cal.Rptr. 863 (1974) (no critical stage analysis); *People v. Ferry*, 237 Cal.App.2d 880, 887, 890, 47 Cal.Rptr. 324 (1965) (holding (1) that defendant was indigent and entitled to representation by the public defender; (2) that the public defender's duty to provide counsel ceases when defendant retains private counsel; and (3) failing to find that the defendant was unrepresented at any critical stage); *In re Smiley*, 66 Cal.2d 606, 615-16, 625, 58 Cal.Rptr. 579, 427 P.2d 179 (1967) (criminal defendant was indigent at the time of trial, was not advised he could have an attorney appointed by the court, and had not waived the right to counsel such that his constitutional right to counsel was violated; stating that if the defendant is unrepresented at the time of arraignment the court must ask him if he desires the aid of counsel and if he desires and is unable to employ counsel, the court must assign counsel to defend him); *People v. Cummings*, 255 Cal.App.2d 341, 343, 346-47, 62 Cal.Rptr. 859 (1967) (criminal defendant was represented himself at arraignment, the preliminary hearing, and trial; reversing conviction because there was no effective waiver of the right to counsel); *People v. Pettingill*, 21 Cal.3d 231, 145 Cal.Rptr. 861, 578 P.2d 108 (1978) (criminal

United States District Court
Northern District of California

defendant was detained for prolonged custodial interrogation prior to arraignment); *In re Brindle*, 91 Cal.App.3d 660, 670 154 Cal.Rptr. 563 (1979) (trial court properly granted the public defender the right to access the criminal defendants who were inmates in the California Men's Colony); *People v. Carlon*, 161 Cal.App.3d 1193, 1196, 1196 n.2, 208 Cal.Rptr. 18 (1984) (holding that refusal to appoint counsel at arraignment was error, but harmless error, where, at arraignment, upon the request for counsel, the court informed the criminal defendant that the public defender did not have anyone to staff the court and therefore asked him to enter a not guilty plea and set the matter for pre-trial and jury trial); *People v. Howell*, 178 Cal.App.3d 268, 269-71, 223 Cal.Rptr. 818 (1986) (holding that an indigent accused who is provided counsel for the arraignment only must be advised of and waive his right to appointed counsel at all subsequent stages of the proceedings before the court may accept his guilty plea; criminal defendant entered guilty plea at arraignment); *Ng v. Superior Court*, 4 Cal.4th 29, 36-37, 13 Cal.Rptr.2d 856, 840 P.2d 961 (1992) (holding that the California Constitution, and related statutory provisions, do not require multiple prompt arraignments where the criminal accused has been promptly arraigned in one county and is being held there as a result of those charges). Thus, Plaintiffs have offered no authority for the proposition that the initial appearance held in Contra Costa County was by itself a critical stage at which counsel was required to be present.

Plaintiffs further argue that the Court cannot divide the arraignment into its constituent portions and determine whether any constituent portion alone amounts to a non-critical stage. However, the facts giving rise to this case are such that the arraignment was bifurcated.[6] Plaintiffs were unrepresented at the initial portion but represented at the continued arraignment. To determine whether there has been a violation of the Sixth Amendment based on a deprivation of counsel at a critical stage, the Court must ascertain whether the only hearing at which Plaintiffs were unrepresented was a critical stage. In addition, the Court must ascertain whether the waiting period following the initial appearance was a critical stage.

---

[6] Plaintiffs argue that the Court must look to the jurisdictional practice, as opposed to the facts of an individual case, to determine whether a given stage of the proceedings is critical. Yet Plaintiffs also allege that the practice throughout the jurisdiction of Contra Costa County in the relevant time period was to divide the arraignment in this manner.

1

2

            **c.**       **Appointment of Counsel a Reasonable Time After Attachment
Where Counsel Was Present at All Subsequent Critical Stages**

3           In *Rothgery*, the Supreme Court stated that "counsel must be appointed within a reasonable

4   time after attachment to allow for adequate representation at any critical stage before trial, as well

5   as at trial itself." *Rothgery*, 554 U.S. at 212, 128 S.Ct. 2578, 171 L.Ed.2d 366. *Rothgery* did not

6   discuss a framework for conducting the analysis into what a reasonable time would be. *Id*. at 212

7   n.15 ("We do not here purport to set out the scope of an individual's postattachment right to the

8   presence of counsel. It is enough for present purposes to highlight that the enquiry into that right is

9   a different one from the attachment analysis").

10           After *Rothgery*, federal district courts have three times addressed the issue of whether a

11   delay in the appointment of counsel is reasonable. In all three cases, the district court has declined

12   to find the delay – forty days, two months, and an unspecified period – unreasonable without proof

13   of actual prejudice:

> Finally, although the right to counsel under the Sixth Amendment
> attaches at the time of an arrestee's initial appearance, <u>Rothgery v.
> Gillespie County, Texas</u>, 554 U.S. 191, 128 S.Ct. 2578, 171 L.Ed.2d
> 366 (2008), neither the Supreme Court nor the Fifth Circuit has
> determined that counsel must be appointed within a specific period
> of time thereafter. … All that the plaintiff has alleged in this case is
> that he was not provided with appointed counsel for a period of forty
> (40) days after his arrest. He fails to allege, however, that he
> suffered any actual prejudice as a result of this delay or that, had an
> attorney been appointed at an earlier time, a meritorious defense
> might have been asserted resulting in his release or in the dismissal
> of the charges levied against him. … Accordingly, in the absence of
> any assertion of prejudice resulting from the alleged delay, this
> Court concludes that the alleged 40-day delay in the appointment of
> counsel was not so unreasonable as to result in a Sixth Amendment
> violation.

24   *Grogen v. Gautreaux*, 2012 U.S. Dist. LEXIS 120411, *9-*10 (M.D. La. July 11, 2012); *see also*

25   *Hawkins v. Montague County*, 2010 U.S. Dist. LEXIS 116361, *35 (N.D. Tex. Nov. 1, 2010)

26   ("The Court finds that the approximate two-month delay in receiving court-appointed counsel fails

27   to rise to the level of a constitutional violation based on the Sixth Amendment"); *Wingo v.*

28   *Kaufman County*, 2010 U.S. Dist. LEXIS 55865, *2-*3 (N.D. Tex. June 4, 2010) ("The court can

United States District Court
Northern District of California

1   not determine from plaintiff's complaint … whether the delay in appointment of counsel was

2   reasonable or whether plaintiff suffered any prejudice from the delay").  These decisions are

3   consistent with the Supreme Court's reference to ineffective assistance of counsel in *Rothgery*.

4   *See Gonzalez-Lopez*, 548 U.S. at 147, 126 S.Ct. 2557, 165 L.Ed.2d 409 (distinguishing the right to

5   effective assistance of counsel from the case the Court was addressing because "a violation of the

6   Sixth Amendment right to *effective* representation is not 'complete' until the defendant is

7   prejudiced"); *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

8   ("any deficiencies in counsel's performance must be prejudicial to the defense in order to

9   constitute ineffective assistance under the Constitution").

**2.     Application to Facts**

**a.     Attachment**

12        Following *Rothgery*, the Court again concludes, on the basis of the facts alleged, that that

13   the right to counsel attached at the initial appearance.  The parties earlier agreed on this point.  *See*

14   Order, 13.  At the initial appearance, the court asked each Plaintiff whether he could afford

15   counsel.  SAC, ¶¶ 30, 39.  Each responded that he could not and would like the court to appoint

16   counsel.  *Id*.  After the right to counsel attached, the court referred Plaintiffs cases to Defendant

17   and continued the arraignment to a later hearing date for "further arraignment."  *Id*.  Neither

18   Plaintiff entered a plea.  *Id*.  Neither Plaintiff was represented until the further arraignment

19   hearing, where each Plaintiff was represented by counsel and entered a plea.  *Id*. at ¶¶ 32-33, 44.

**b.     Critical Stage**

**i.     Initial Appearance**

22        In their Complaint, Plaintiffs alleged that the initial appearance consisted of (1) the court's

23   inquiry into whether Plaintiffs could afford counsel and whether Plaintiffs desired appointed

24   counsel; (2) referral of the matter to the Public Defender; and (3) a continuance.  Complaint, ¶¶

25   31, 35.  In their SAC, Plaintiffs add the new allegation that bail is set at the initial appearance.

26   SAC, ¶¶ 30, 39.  Plaintiffs do not provide any detail into the manner in which bail is set at the

27   initial appearance.  For example, they have not alleged whether facts are admitted or argument is

28   made as to bail at the initial appearance or whether bail is simply set pursuant to a previously set

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

bail schedule.  The Court again concludes that, on the facts alleged, the Sixth Amendment permitted the events that actually transpired at the initial appearance to take place without the presence of counsel, and permits a continuance for the appointment of counsel.

*Lopez-Valenzuela* is instructive.  In the relevant portion of that opinion, the Ninth Circuit addressed whether the Sixth Amendment right to counsel was triggered by initial appearances in Arizona.  *Lopez-Valenzuela*, 2013 WL 2995220, at *10-*11.  At the initial appearance in Arizona no plea is entered.  *Id*. at *10.  At the initial appearance, the commissioner must:  ascertain the criminal defendant's name and address; inform the defendant of the charges, the right to counsel, and the right to remain silent; determine whether probable cause exists to believe that a crime was committed (if the arrest was made without a warrant); appoint counsel if the defendant is eligible; and determine release conditions, including an immigration status determination that can result in certain felony defendants being precluded from obtaining bail.  *Id*. at *1-*2, *10.  Although the bail determination was made at the initial appearance, any party can move for a reexamination of the release conditions.  *Id*. at *2.  Pursuant to Arizona law, a hearing on such a motion shall be held as soon as practicable but not later than seven days after filing.  *Id*.  In addition, if the court determines that the arrestee "entered or remained in the United States illegally," an evidentiary hearing, known as a *Simpson/Segura* hearing, is held within twenty-four hours to determine whether bail should be denied.  *Id*. at *1.  Arrestees are entitled to counsel at the *Simpson/Segura* hearing.  *Id*.

In *Lopez-Valenzuela*, the Ninth Circuit concluded that the Sixth Amendment right to counsel was not triggered by the initial appearance in Arizona after applying the *Menefield* three-factor test.  As to the first factor, the court reasoned that the "only strategies available to the defendant seeking to avoid pretrial detention were to deny the crime(s) alleged or that the defendant has entered or remained in the United States illegally.  But, as no plea is entered at an [initial appearance] and the 'initial appearance provides no opportunity for a defendant to present evidence or make any argument regarding the law or evidence,' [citation], these are not remedies available at the initial appearance.  Rather, these are remedies available after the initial appearance at a *Simpson/Segura* hearing, by which point counsel will have been appointed."  *Id*. at *11.  With

1  regard to the second factor, the court held that skilled counsel was unnecessary to help an accused

2  understand the purely administrative matters covered during the initial appearance. *Id*. Reaching

3  the third factor, the court concluded that the initial appearance did not test the merits of the

4  defendant's case, noting that no plea is entered and any discussion of immigration status is

5  undertaken for the sole purpose of determining whether a defendant is bondable. *Id*.

6          Plaintiffs' argument is that the initial appearance was a critical stage because, consistent

7  with California law, it should have been a complete arraignment. *See* Opposition, 5-14 (arguing

8  that arraignment in California is a critical stage and that the Court improperly excised the portions

9  held at the initial appearance in undertaking its analysis and applied the wrong legal standard to

10 the excised portions, not putting forward any argument that the proceedings held at the initial

11 appearance made it a critical stage of the proceedings); *see also* Plaintiffs' Supplemental, 4-8. As

12 discussed in more detail later in this Order, California law does not require that the entire

13 arraignment be completed at the initial appearance. Plaintiffs' reliance on the entirety of the

14 arraignment to establish a critical stage in effect concedes that nothing happened at the initial

15 appearance to make it a critical stage of the proceedings.[7] Moreover, Plaintiffs' supplemental

16 brief appears to concede that the procedures at issue in this case would be proper if they had been

17 enacted by the California legislature. *See* Plaintiffs' Supplemental, 5, 9 (distinguishing *Lopez-*

18 *Valenzuela* from the present case because the procedure at issue in that case was enacted by the

19 Arizona legislature, not the Public Defender). If that is true, then there can be no Sixth

20 Amendment violation.

21         Even if California law requires the entire arraignment occur at the initial appearance, the

22 SAC in this case does not allege that the complete arraignment occurred. As in *Lopez-Valenzuela*,

23 the question before the Court here is whether the initial appearance held in Contra Costa County in

24 each of Plaintiffs' criminal cases was a critical stage of the proceedings such that they were

25 entitled to counsel under the Sixth Amendment. Plaintiffs have been given one opportunity to

26

27 _____

[7] At most, Plaintiffs argue that the Court applied the wrong standard in evaluating the initial appearance in its prior
28 Order. Opposition, 11-14. However, Plaintiffs do not assert any basis for concluding that the initial appearance in
   itself was a critical stage.

amend their Complaint to allege sufficiently that their initial appearances amounted to a critical stage within the meaning of *Menefield*. They have not done so. Like in *Lopez-Valenzuela*: (1) as discussed in more detail in this Court's prior Order, Plaintiffs have not alleged that the absence of counsel to pursue strategies at the initial appearance could result in the loss of significant rights because, as alleged, no rights can be lost at the initial appearance; (2) as alleged there was no legal confrontation in the initial appearance after the accused requested counsel; and (3) nothing occurred at the initial appearance that tested the merits of the accused's case. *See Lopez-Valenzuela*, __ F.3d __, 2013 WL 299520, at *10-*11; Order, 16-18.

Indeed, the initial appearance in *Lopez-Valenzuela* was more substantial than the initial appearance in this case. In *Lopez-Valenzuela*, like here, the defendant was advised of the charges, offered counsel, and a bail determination was made. Unlike the procedure in California, however, the Arizona procedure required the Commissioner to make a probable cause determination. Nonetheless, the Ninth Circuit decided that the initial appearance in Arizona was not a critical stage. In Plaintiffs' initial appearances, where only advice of the charges and the right to counsel, and the setting of bail, occurred, that same conclusion is required.

This conclusion is buttressed by the practical implications of Plaintiffs' argument. If Plaintiffs are correct, the Sixth Amendment would put the state in an impossible position: Counsel must be present, whether available or not, and a continuance for appointment of counsel (as happened here) would not remedy the constitutional violation. One can readily envision the situation where the Public Defender has a conflict of interest, and conflict counsel is not available for a period of time. Plaintiffs' argument would call this a deprivation of a defendant's Sixth Amendment rights that could not be remedied. The Constitution imposes no such restriction.

For the above reasons, Plaintiffs' Sixth Amendment claim is dismissed with prejudice to the extent it relies on the theory that the initial appearance was a critical stage of the proceedings.

### ii.        Waiting Period

The Sixth Amendment may be violated during the waiting period either because (1) the waiting period contained, or was itself, a critical stage; or (2) the failure to appoint counsel at some point during the waiting period prevented Plaintiffs from being adequately represented at a

subsequent critical stage. First, the Court concludes, on the facts alleged, that the waiting period did not contain, and was not, a critical stage.

In their Complaint, Plaintiffs did not allege any activity during the waiting period that could have made that time frame a critical stage. Now, Plaintiffs allege (1) that the Probation Department prepared a bail study during the waiting period; (2) that the bail study was an influential report; and (3) that the bail study contained no favorable information because the Probation Department could not ascertain that information in the absence of appointed counsel. SAC, ¶¶ 31, 40.

The Court applies the three *Menefield* factors to the new allegations regarding the waiting period. Plaintiffs still have not alleged that there was any legal confrontation during the waiting period or that anything occurred to test the merits of their case during the waiting period. Rather, the bail study allegations pertain to whether failure to pursue strategies or remedies could result in the loss of significant rights. However, Plaintiffs do not allege that they could lose their ability to present favorable evidence at a bail determination. Accordingly, on the facts alleged, the Court cannot conclude that the preparation of the bail study in Contra Costa County is a critical stage in the proceedings.

Second, Plaintiffs have not alleged that the failure to appoint counsel during the waiting period prejudiced their representation at subsequent critical stages. Regarding Farrow, the SAC contains only the general statement that the prosecutor's office had more time to prepare for the preliminary hearing than defense counsel. *See* SAC, ¶ 34. Plaintiffs make no allegation that the disparity in preparation time impacted Farrow's defense in any way. Thus, there is nothing in the SAC from which to conclude that counsel was not appointed a reasonable time after attachment. *See Rothgery*, 554 U.S. at 212, 128 S.Ct. 2578, 171 L.Ed.2d 366 ("counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself").

The allegations pertaining to Wade come closer to alleging that counsel was not appointed at a reasonable time after attachment. Plaintiffs allege (1) that the delay in appointment of counsel impinged Wade's ability to interview a material witness on an important *Miranda* issue in his case

United States District Court
Northern District of California

26

because her memory faded; and (2) allowed the prosecution to amend its complaint as of right. SAC, ¶¶ 43, 45.  Plaintiffs allege that this was prejudicial to Wade because (1) certain facts that the witness may have remembered pertaining to a potential *Miranda* violation may have been helpful to his defense; and (2) the amended complaint increased his potential exposure.  *Id.*

First, as to Wade's inability to interview a material witness, Plaintiffs still have not alleged, for example, how that inability affected, or could have affected, any subsequent proceedings in Wade's case.  On these allegations, there is no basis to conclude that the delay in the appointment of counsel impacted Wade's representation at subsequent critical stages of his proceedings. Moreover, Plaintiffs only allege that it is "possible" that the witness would have remembered the relevant details of Wade's interrogation had appointment of counsel not been delayed.  Plaintiffs do not plead that such a scenario is plausible, nor do they provide any factual allegations to support that possibility.  For example, counsel interviewed the witness in question seven days after appointment at the continued arraignment.  There are no allegations that counsel would have interviewed the witness earlier, or that the witness, who could not remember whether *Miranda* warnings were given when interviewed twenty days after the arrest, would have remembered them a week earlier.  Though this scenario seems implausible to the Court, if Wade is in possession of any such facts he may plead them.  He must also plead the impact of this evidence on the progress of his case, i.e. prejudice.

Second, the allegations pertaining to the prosecution's ability to amend its complaint as of right also fail because Plaintiffs have not alleged any impact this had on any later proceedings. Moreover, Plaintiffs have not, and cannot, plausibly alleged that the prosecution would not have been able to amend the complaint to increase Wade's exposure even if he had entered a plea at the initial appearance.

Wade will be given one more opportunity to allege that counsel was not "appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself."  *See Rothgery*, 554 U.S. at 212, 128 S.Ct. 2578, 171 L.Ed.2d 366. Leave to amend shall be limited to additional facts (1) concerning the witness' faded memory; and (2) any impact the witness' faded memory had on Wade's proceedings.  As to Farrow, this claim

27

is dismissed with prejudice.

### D.  Fourteenth Amendment Due Process as to State Speedy Trial Statutes

Plaintiffs' Fourteenth Amendment Due Process claims predicated on violations of California Penal Code §§ 825, 859b, and 1050 are dismissed with prejudice.

#### a.  Background Law

"Unless there is a breach of constitutional rights, … § 1983 does not provide redress in federal court for violations of state law." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (quoting *Schlette v. Burdick*, 633 F.2d 920, 922 n.3 (9th Cir. 1980)). "[N]ot every violation of state law amounts to an infringement of constitutional rights." *Id.*

Plaintiffs seek to assert their statutory speedy trial rights, provided by the state of California, through the Fourteenth Amendment. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law…" U.S. Const. amend. XIV, § 1. The Fourteenth Amendment contains both procedural and substantive due process protections. *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

#### i.  Procedural Due Process

Courts analyze procedural due process claims in two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2008), *cert. denied*, __ U.S. __, 130 S.Ct. 466, 175 L.Ed.2d 313 (2009) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

"A liberty interest may arise from either of two sources: the due process clause itself or state law." *Id.* (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986)). "[T]o create a liberty interest protected by due process, the state law must contain: (1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates are met." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995), *cert. denied*, 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996) (internal

28

1   quotation marks and citations omitted); *Oviatt*, 954 F.2d at 1474.  Where "[t]he only mandatory

2   language in [the state statute at issue] concerns a procedural right …[, t]hat language cannot create

3   a liberty interest within the meaning of the Fourteenth Amendment because expectation of

4   receiving process is not, without more, a liberty interest protected by the Due Process Clause of

5   the Fourteenth Amendment."  *Carver*, 558 F.3d at 875 (internal quotation marks, footnote, italics,

6   and citations omitted); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1156 (9th Cir.

7   2012) ("to contain the requisite 'substantive predicates,' 'the state law at issue must provide more

8   than merely procedure, it must protect some substantive end'") (quoting *Bonin*, 59 F.3d at 842).

9                              **ii.    Substantive Due Process**

10          Substantive due process limits what the government may do in its legislative and executive

11   capacities.  *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043

12   (1998).  Substantive due process "forbids the government from depriving a person of life, liberty,

13   or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the

14   concept of ordered liberty.'"  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting

15   *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998))".  Accordingly, "A substantive

16   due process claim 'must, as a threshold matter, show a government deprivation of life, liberty, or

17   property.'"  *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026

18   (9th Cir. 2007) (quoting *Nunez*, 147 F.3d at 871).

19                              **iii.   Statutory Speedy Trial Rights**

20          California Penal Code §§ 859b, 1382, and 1050, governing the right to a speedy

21   preliminary hearing, the right to a speedy trial, and the procedure for granting continuances,

22   including a continuance of the preliminary hearing, are set forth in this Court's prior Order.  *See*

23   Order, 24-26.  In the SAC, Plaintiffs also assert a denial of their right to a prompt arraignment

24   pursuant to California Penal Code § 825.  SAC, ¶ 10.

25          California Penal Code § 859 reads:

26          When a defendant is charged with the commission of a felony by written complaint
            subscribed under oath and on file in a court in which a felony is triable, he or she shall,
27          without unnecessary delay, be taken before a magistrate of the court in which the
            complaint is on file.  The magistrate shall immediately deliver to the defendant a copy of

28

the complaint, inform the defendant that he or she has the right to have the assistance of counsel, ask the defendant if he or she desires the assistance of counsel, and allow the defendant reasonable time to send for counsel. … If the defendant desires and is unable to employ counsel, the court shall assign counsel to defend him or her… . If it appears that the defendant may be a minor, the magistrate shall ascertain whether that is the case, and if the magistrate concludes that it is probable that the defendant is a minor, he or she shall immediately either notify the parent or guardian of the minor … of the arrest, or appoint counsel to represent the minor.

Cal. Penal Code § 859.  In *Ng*, the California Supreme Court noted that § 859 has been described as "in pari materia" with § 859b, and that § 859b applies only to persons in custody.  *Ng*, 4 Cal.4th at 38, 13 Cal.Rptr.2d 856, 840 P.2d 961.  The court drew on that note as additional support for its holding that a defendant in custody for charges in one county need not be immediately arraigned in other counties.  *Id.*

California Penal Code § 849(a) states:

When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

Cal. Penal Code § 849.

California Penal Code § 825(a) provides:

(a)(1)  Except as provided in paragraph (2), the defendant shall in all cases be taken before a magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays.

(2)  When the 48 hours prescribed by paragraph (1) expire at a time when the court in which the magistrate is sitting is not in session, that time shall be extended to include the duration of the next court session on the judicial day immediately following.  If the 48-hour period expires at a time when the court in which the magistrate is sitting is in session, the arraignment may take place at any time during that session.  However, when the defendant's arrest occurs on a Wednesday after the conclusion of the day's court session, and if the Wednesday is not a court holiday, the defendant shall be taken before the magistrate not later than the following Friday, if the Friday is not a court holiday.

Cal. Penal Code § 825(a).

### b.    Application to Facts

In its prior Order, the Court dismissed Plaintiffs' constitutional claim predicated on the

violation of their statutory speedy trial rights provided by California Penal Code §§ 859b, 1382, 1049.5, and 1050.  In their SAC, Plaintiffs reassert liability under §§ 859b and 1050.  SAC, ¶ 10. Plaintiffs also add a theory of liability pursuant to § 825.  As in the previous Order, the Court concludes that Plaintiffs' arraignments were complete when they were asked to enter a plea at the further arraignment hearing.  Order, 26.  Thus, for the same reasons discussed in the previous Order, the Court again concludes that Plaintiffs have not alleged a violation of either § 859b or § 1050.  *See id.* at 27-28.  The Court does not address those issues again here.

Defendant makes two arguments for dismissing Plaintiffs' second and third causes of action to the extent they are premised on § 825.  First, that Defendant did not violate § 825 because the section does not require that arraignment be completed at the initial appearance. Motion, 10; Reply, 9.  Second, that § 825 lacks mandatory language specifying the outcome that must be reached if the substantive predicates are met to create a cognizable liberty interest. Motion, 10; Reply, 9.  Plaintiffs fail to defend their § 825 theory in their Opposition, making no mention of § 825.  For that reason alone, the second and third causes of action predicated on a violation of § 825 are dismissed without leave to amend.  Moreover, even if § 825 creates a cognizable liberty interest, the plain language of the statute mandates only that the criminal accused be "taken before the magistrate" within the prescribed time limits. [8]  Nothing in the statute prohibits continuance of the arraignment by the court to allow for appointment of counsel.[9]

### E.    Fourteenth Amendment Equal Protection

For the reasons set out below, Plaintiffs' equal protection claim is dismissed with prejudice.

#### 1.    Background Law

The Equal Protection Clause provides that no state shall "deny any person within its jurisdiction the equal protection of the law."  U.S. Const. Amendment XIV, § 1.  The Supreme

---

[8] The alleged "blatant violation of Penal Code section 825" visited on Wade through his detention prior to his initial court appearance is irrelevant to this section because Plaintiffs do not allege that Defendant had anything to do with that violation.  *See* SAC, ¶ 37.

[9] To the extent § 1050 may have been implicated by the continuance, that "section is directory only and does not mandate dismissal of an action by its terms."  Cal. Penal Code § 1050(l).

United States District Court
Northern District of California

1    Court has noted that the Equal Protection Clause "is basically a direction that all persons similarly

2    situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105

3    S.Ct. 3249, 87 L.Ed.2d 313 (1985).

4          A plaintiff may allege an equal protection violation one of several ways. First, a plaintiff

5    can demonstrate that the defendant intentionally discriminated on the basis of plaintiff's

6    membership in a protected class. *See*, *e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

7    2001). Under this theory, a plaintiff must show that the defendant's actions were a result of the

8    plaintiff's membership in a suspect class. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th

9    Cir. 2005). Such actions are subjected to "strict scrutiny" and "will only be sustained if they are

10   suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 439, 105 S.Ct.

11   3249, 87 L.Ed.2d 313. Similar oversight is applied where state action "impinges on personal

12   rights," otherwise framed as "fundamental rights," protected by the Constitution. *Id.*

13         If the action does not involve a suspect classification, a plaintiff may establish an equal

14   protection claim by showing that similarly situated individuals were intentionally treated

15   differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v.*

16   *Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *see San Antonio School*

17   *District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1972); *Squaw Valley*

18   *Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) *overruled on other grounds*

19   *Action Apt. Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007);

20   *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal

21   protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an

22   identifiable class; (2) the plaintiff was intentionally treated differently from others similarly

23   situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*,

24   528 U.S. at 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060.

25         Several Supreme Court decisions have recognized violations of the Equal Protection

26   Clause where the state provides mandatory criminal procedures, such as an appeal as of right, but

27   in effect makes those procedures available only to those who can pay. *See Evitts v. Lucey*, 469

28   U.S. 387, 403-05, 105 S.Ct. 830, 83 L.Ed.2d 281 (1985) (interpreting Supreme Court precedent as

United States District Court
Northern District of California

32

involving equal protection concerns "because the State treated a class of defendants-indigent ones-differently for the purposes of offering them a meaningful appeal") (citing *Griffin v. Illinois*, 351 U.S. 12, 17-18, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (where the state in effect dismissed the petitioner's appeal, which was taken as of right, because he could not afford a transcript it made the right available only to the wealthy in violation of equal protection principles and also violated due process because the disposition of the appeal was arbitrary); *Douglas v. California*, 372 U.S. 353, 357-58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (procedure whereby indigent defendant must demonstrate merit of case before obtaining counsel on appeal "does not comport with fair procedure" – "[t]here is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel[], while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself")).  As Plaintiffs point out, the California Supreme Court has indicated in dicta that understaffing a public defender's office may result in denying indigent defendants the equal protection of the laws where the understaffing results in a violation of the defendants' state speedy trial rights.  *See Barsamyan v. Appellate Div. of Superior Court*, 44 Cal.4th 960, 981-82, 81 Cal.Rptr.3d 265, 189 P.3d 271 (2008) (citing *People v. Johnson*, 26 Cal.3d 557, 571-72, 162 Cal.Rptr. 431, 606 P.2d 738 (1982) (stating, in dicta, that treating conflicts in the public defender's calendar as good cause for a delay extending the time for trial beyond that required by California Penal Code § 1382 may result in denying indigent defendants the equal protection of the laws)).

### 2.    Application to Facts

Plaintiffs allege that they were denied a prompt arraignment, their right to assistance of counsel, and their statutory speedy trial rights on the basis of their indigence whereas similarly situated criminal defendants who could afford private counsel were furnished prompt arraignments, were permitted to enter pleas at their first appearance, were allowed to influence the probation department with favorable information concerning bail circumstances in the days following arraignment, were immediately able to apply for bail or release on their own recognizance, were permitted to immediately assert their statutory speedy trial rights, and were able to immediately begin preparation of their cases for future critical stages.  SAC, ¶ 66.

United States District Court
Northern District of California

1  Plaintiffs have not alleged that the Contra Costa County Public Defender, the only

2  Defendant in this case, treated any group or individual differently from any other group or

3  individual through the application of its policy prior to the filing of this case.[10]  Indeed, the Contra

4  Costa Public Defender's Office only represents indigent defendants and capital defendants.[11]

5  Because, as alleged, Defendant had one blanket policy that applied equally to each of its clients

6  during the relevant time period, Plaintiffs have not adequately pled a violation of the Equal

7  Protection Clause by Defendant.

8  **F.      Remaining State Law Claims**

9  Under state law, Plaintiffs seek damages for an alleged violation of the California Bane

10  Act and seek a writ of mandate to compel Defendant to comply with California Government Code

11  § 27706.  *See* Cal. Civ. Code §§ 51 *et seq.*, 52, 52.1; Cal. Gov. Code § 27706.  The Court has

12  jurisdiction over this action on the basis of the federal questions raised by the Complaint.  *See* 28

13  U.S.C. § 1331.  The Court's jurisdiction over the remaining state law claims relies on its

14  supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a).  Having dismissed all claims over which it

15  has original jurisdiction, the court declines to exercise its supplemental jurisdiction over the state

16  law claims.  *See* 28 U.S.C. § 1367(c)(3).  Plaintiffs' fifth and sixth causes of action are dismissed

17  without prejudice for lack of subject matter jurisdiction.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25

26  ---

[10] In their SAC, Plaintiffs allege that Defendant now appears at the initial appearance to represent in-custody felony
27  defendants but continues to fail to do so with respect to in-custody misdemeanor defendants.  SAC, ¶¶ 1-2.  Plaintiffs
do not specify to which group they belong.
[11] Plaintiffs do not allege that the policy has ever made any distinction between capital defendants and non-capital
28  defendants.

34

**IV.     CONCLUSION**

For the foregoing reasons, Defendants Motion to Dismiss the SAC is granted.  Farrow's federal claims are dismissed with prejudice.  The Court declines to exercise jurisdiction over Farrow's state law claims, which are dismissed without prejudice and may not be reasserted in this case.  Wade will be given one more opportunity to amend his § 1983/Sixth Amendment claim, as permitted in the body of this Order, and to reassert the same state law claims found in the SAC. Any amended complaint shall be filed within twenty-one (21) days of this Order.

IT IS SO ORDERED.

Dated: August 7, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California