UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN FARROW, et al.,

        Plaintiffs,

    v.

ROBIN LIPETZKY,

        Defendant.

Case No. 12-cv-06495-JCS

**ORDER REGARDING MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. No. 93

## I.   INTRODUCTION

In this putative class action under 42 U.S.C. § 1983, Plaintiffs John Farrow and Jerome Wade allege that Defendant Robin Lipetzky, in her official capacity as the Contra Costa County Public Defender, violated Plaintiffs' Sixth Amendment right to counsel by implementing a policy of delaying appointment of counsel until several days after a criminal defendant's first appearance in court. Plaintiffs also bring related claims under California law. The Court twice previously dismissed Plaintiffs' claims. After the second dismissal, Plaintiffs appealed to the Ninth Circuit, which reversed this Court's holding as to certain aspects of Plaintiffs' claim under the Sixth Amendment, and remanded for this Court to consider whether Plaintiffs have adequately alleged that Lipetzky failed to provide counsel within a reasonable time after attachment of the right.

Lipetzky moves to dismiss once again. Among other arguments, she raises for the first time the question of whether Plaintiffs' claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court held a hearing on January 20, 2017. For the reasons discussed below, Lipetzky's motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II.    BACKGROUND

### A.    Plaintiffs' Allegations and Facts Subject to Judicial Notice

Plaintiffs allege that Lipetzky implemented a written policy that "arbitrarily withheld legal representation to indigent, in-custody criminal defendants for a period of 5 to 13 days after their initial Court appearance." 3d Am. Compl. ("TAC," dkt. 91) ¶ 1.  Under that policy, a defendant would not receive counsel at his or her first court appearance, but if a defendant requested counsel at that appearance and could not afford to pay, the court would set bail, refer the defendant to the public defender, and continue the case for a "further arraignment" several days later. *See id.* ¶¶ 1−2, 4, 21, 27, 36.

Plaintiff Farrow was arrested on August 30, 2011, based on allegations that he had assaulted his domestic partner. *Id.* ¶¶ 25, 31.  He first appeared in court on September 2, 2011, at which time the judge asked if he could afford counsel and would like the court to appoint counsel. *Id.* ¶¶ 26−27.  Farrow replied that he could not afford counsel and would like appointed counsel, and the judge "set bail, 'referred the matter to the Public Defender,' and continued the matter to September 15, 2011 for 'further arraignment.'" *Id.* ¶ 27.  The judge also asked the probation department to prepare a bail study, which was prepared during the period between the two court appearances and included only information unfavorable to Farrow because, without counsel, there was no way for him to provide mitigating information such as his ties to the community or employment status. *Id.* ¶ 28.  The judge did not advise Farrow of his right to enter a plea at the first appearance, and Farrow remained in jail for the next thirteen days. *Id.* ¶ 27.

Farrow was appointed counsel and entered a plea at his second appearance on September 15, 2011, which was sixteen days after his arrest and thirteen days after his first appearance. *Id.* ¶ 29.  According to Plaintiffs, the delay in Farrow obtaining counsel "might have" contributed to his investigator's failure to locate witnesses whose testimony could have implicated the credibility of the complaining witness (Farrow's domestic partner) and thus "would have had an enormous impact on plea negotiations and may have resulted in acquittal had the matter gone to trial." *Id.* ¶ 31.  Farrow pled guilty to one count against him on December 1, 2011. Def.'s Req. for Judicial Notice ("RJN," dkt. 94) Ex. A.

Plaintiff Wade, then seventeen years old, was arrested at his high school on November 8, 2011 for his alleged involvement in a convenience store robbery.  TAC ¶¶ 32, 43.  Wade first appeared without counsel on November 14, 2011.  *Id.* ¶ 33.[2]  A country prosecutor also appeared in court that day, which Plaintiffs contend made the appearance "an adversarial encounter."  *Id.* ¶ 35.  The judge set bail and asked Wade whether he could afford counsel and whether he would like counsel appointed.  *Id.* ¶ 36.  Wade responded that he could not afford counsel and would like appointed counsel, and the judge "'referred the matter to the Public Defender,' and continued the matter to November 21 for 'further arraignment.'"  *Id.*  The judge did not advise Wade of "his right to enter a plea, his right to bail, his right to prompt arraignment or his right to a speedy preliminary hearing and trial."  *Id.*  As in the case of Farrow, the judge also referred the matter to the probation department for a bail study, which did not include information favorable to Wade because he did not have counsel.  *Id.* ¶ 37.  Wade remained in jail for seven days.  *Id.* ¶ 36.

During the period between Wade's first and second court appearances, the police and district attorney continued their investigation of his case.  *Id.* ¶ 39.  On November 18, 2011, the district attorney filed an amended complaint adding new charges and significantly increasing Wade's exposure.  *Id.* ¶ 40.  The district attorney was able to do so without leave of the court because Wade had not yet entered a plea.  *Id.*

Wade was appointed counsel at his second court appearance on November 21, 2011.  *Id.* ¶ 41.  Later, his investigator interviewed his high school principal, who had been present when the police interrogated Wade.  *Id.* ¶ 42.  The principal could not remember when Wade was given *Miranda* warnings or whether he had been wearing a sweatshirt that connected him to the robbery.  *Id.* ¶¶ 42, 43.  Plaintiffs allege that the principal "likely" would have remembered what Wade was wearing if she had been interviewed sooner, and suggest (but do not specifically allege) that her memory of the *Miranda* warnings would have been clearer as well.  *See id.*  Wade pled guilty to three counts on December 6, 2012.  RJN Ex. B.

Plaintiffs characterize their claims as "a facial challenge to the constitutionality of

---

[2] Plaintiffs allege that Wade was held illegally for four days before his first appearance, but do not argue that that detention is relevant to Wade's claims against Lipetzky.  *See* TAC ¶ 34.

Defendant's written policy of arbitrarily withholding counsel for an unreasonable period of time," and seek to represent a class consisting of all persons who "were subjected to the deprivation of counsel at their first court appearance and were forced to continue their cases for 5 days or more for appointment of counsel, pursuant to the Public Defender's written Policy," from December 21, 2010 through the resolution of this action. TAC ¶¶ 45−48.

The Third Amended Complaint includes three claims: (1) a claim under 42 U.S.C. § 1983 for violation of Plaintiffs' Sixth Amendment right to counsel, TAC ¶¶ 56−58; (2) a claim under the Bane Act, sections 52 and 52.1 of the California Civil Code, for violation of Plaintiffs' civil rights, TAC ¶¶ 59−60; and (3) and a claim under sections 1085 and 1086 of the California Code of Civil Procedure for a writ of mandate to enforce section 27706 of the California Government Code, which requires public defenders to represent criminal defendants "at all stages of the proceedings," TAC ¶¶ 61−63.

Although the Third Amended Complaint includes allegations that Lipetzky's policy sometimes resulted in delays in appointing counsel longer than thirteen days, Plaintiffs have stipulated that the Court may disregard that allegation for the purpose of Lipetzky's motion to dismiss. *See* Case Mgmt. Statement (dkt. 87) at 4.

**B.  Procedural History**

**1.  May 2013 Order**

Plaintiffs' original complaint included six claims: (1) violation of Plaintiffs' right to counsel under the Sixth Amendment; (2) violation of Plaintiffs' right to a speedy trial under substantive due process protections of the Fourteenth Amendment; (3) violation of Plaintiffs' right to a speedy trial under procedural due process protections of the Fourteenth Amendment; (4) violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment with respect to the timing of Plaintiffs' bail hearings; (5) violation of California Civil Code sections 52 and 52.1; and (6) a claim for a writ of mandate to enforce California Government Code section 27706. *See* Order Granting Def.'s Mot. to Dismiss Compl. ("May 2013 Order," dkt. 47) at 5−6.[3]

---

[3] *Farrow v. Lipetzky*, No. 12-cv-06495-JCS, 2013 WL 1915700 (N.D. Cal. May 8, 2013).

The Court held that Plaintiffs' right to counsel attached at their first court appearances, but that neither that appearance nor the waiting period before the second appearance was a "critical stage" at which counsel was required. *Id.* at 14−20. The Court also held that the delay in appointing counsel between the time of attachment and the second appearance—which, unlike the first, was a critical stage—did not violate the Supreme Court's instruction that counsel must be provided within a reasonable time after attachment, because the delay was shorter than in other district court cases that found no violation, and because Plaintiffs did not adequately allege that they were prejudiced by the delay. *Id.* at 20−22 (citing *Rothgery v. Gillespie County*, 554 U.S. 191 (2008)). The Court therefore dismissed Plaintiffs' Sixth Amendment claim with leave to amend. *Id.* The Court also dismissed Plaintiffs' other federal claims with leave to amend, for reasons that are not relevant to the present motion because Plaintiffs have not renewed those claims. *Id.* at 23−31. With no federal claims remaining, the Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. *Id.* at 31−32.

### 2. August 2013 Order

After the Court dismissed the initial complaint, Plaintiffs amended their complaint twice, and Lipetzky moved to dismiss the second amended complaint. *See generally* Order Granting Def.'s Mot. to Dismiss 2d Am. Compl. ("Aug. 2013 Order," dkt. 69).[4] The Court granted that motion and dismissed all claims, although it allowed Wade leave to amend his Sixth Amendment claim. *Id.* at 1−2.

With respect to the Sixth Amendment claim, the Court reaffirmed its previous holdings that neither the first appearance nor the waiting period before the second appearance was a critical stage at which Plaintiffs were entitled to counsel, but the second appearance was. *Id.* at 22−26 (citing *Lopez-Valenzuela v. County of Maricopa*, 719 F.3d 1054 (9th Cir. 2013), *subsequently superseded sub nom. Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (en banc)[5]).

---

[4] *Farrow v. Lipetzky*, No. 12-cv-06495-JCS, 2013 WL 4042276 (N.D. Cal. Aug. 7, 2013), *rev'd in part*, 637 F. App'x 986 (9th Cir. 2016).

[5] The initial Ninth Circuit panel to hear *Lopez-Valenzuela* affirmed the district court's grant of summary judgment for the defendants on claims under multiple constitutional theories. *See generally Lopez-Valenzuela v. County of Maricopa*, 719 F.3d 1054. This Court's August 2013 Order relied on that panel's Sixth Amendment holding. Later, an en banc panel reached a

5

Turning to the question of whether the challenged policy failed to provide counsel within a reasonable time after attachment of the right, the Court held that although Plaintiffs added allegations regarding the effect of the delay, the allegations did not sufficiently identify any actual prejudice that Plaintiffs suffered as a result. *Id.* at 26−27. Because Plaintiffs came closer to plausibly alleging prejudice to Wade than to Farrow, the Court dismissed Wade's Sixth Amendment claim with leave to further amend but dismissed Farrow's claim with prejudice.

The Court dismissed Plaintiffs' remaining federal claims with prejudice, for reasons that are not relevant to the present motion, and again declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. *Id.* at 28−35. Wade declined to further amend his Sixth Amendment claim, and Plaintiffs instead appealed to the Ninth Circuit.

### 3. Ninth Circuit Decision and Subsequent Proceedings

The Ninth Circuit affirmed this Court's dismissal of Plaintiffs' due process and equal protection claims. *Farrow v. Lipetzky*, 637 F. App'x 986, 987−88 (9th Cir. 2016) (dkt. 81), *cert. denied*, 137 S. Ct. 82 (2016). As for Plaintiffs' Sixth Amendment claims, the panel affirmed this Court's conclusion that, on the facts alleged, Plaintiffs' first court appearance was not a critical stage that required the presence of counsel. *Id.* at 988. The panel held that this Court erred, however, in its analysis of whether counsel was appointed within a reasonable time after attachment of the right, and remanded for consideration of that issue under the correct legal standard:

> The remaining question is whether Lipetzky appointed counsel within a "reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Rothgery*, 554 U.S. at 212. In other words, how soon after the Sixth Amendment right attaches must counsel be appointed, and at what point does delay become constitutionally significant? Instead of addressing whether the delay in appointing counsel was unreasonable, the district court considered only whether the delay "impacted [plaintiff's] representation at subsequent critical stages of his proceedings." By framing the question in that way, the district court erroneously required the plaintiffs to allege actual prejudice. *See United States v. Wade,* 388 U.S. 218, 225, 236–37 (1967)

different outcome, reversing the holding as to substantive due process and finding the Arizona laws at issue facially invalid on that basis, but declined to address the plaintiffs' Sixth Amendment claims. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d at 791−92.

> (finding a Sixth Amendment violation based on the "grave potential for prejudice"); *Hamilton v. Alabama,* 368 U.S. 52, 54 (1961) (finding a Sixth Amendment violation where the absence of counsel "may affect the whole trial"). We therefore remand for the district court to consider whether appointing counsel five to thirteen days and "sometimes longer" after the right attaches complies with the "reasonable time" requirement articulated in *Rothgery.*

*Id.* at 988−89. The panel also directed this Court to reconsider whether supplemental jurisdiction over Plaintiffs' state law claims is appropriate in light of the Court's reconsideration of the Sixth Amendment claim. *Id.* at 989.

The Supreme Court denied Plaintiffs' petition for certiorari on October 3, 2016. *See* dkt. 102. Following remand to this Court, Plaintiffs filed their operative third amended complaint, and Lipetzky again moves to dismiss.

### C.  Parties' Arguments

#### 1.  Motion to Dismiss

According to Lipetzky, the Ninth Circuit's decision in this case requires this Court to consider both whether the delay in appointing counsel created "grave potential for prejudice," and whether it resulted in actual prejudice. Mot. (dkt. 93) at 6. Lipetzky argues that Plaintiffs do not meet the standard to show the former, because the Supreme Court cases on which the Ninth Circuit relied for the "potential for prejudice" standard involved denial of counsel *at critical stages*, and the Ninth Circuit's decision did not reverse this Court's holdings that neither the first appearance nor the waiting period between appearances was a critical stage. *Id.* at 6−8 (discussing *Wade*, 388 U.S. 218; *Hamilton*, 368 U.S. 52). Lipetzky contends that those prior holdings are therefore the law of the case, and that Plaintiffs have not given the Court a sufficient reason to depart from those holdings. *Id.* at 8−9. To the extent Plaintiffs' present complaint could be construed as bringing an as-applied, rather than facial, challenge to the policy at issue, Lipetzky argues that actual prejudice is required for such a challenge, and Plaintiffs have not adequately alleged that they suffered actual prejudice as a result of the policy. *Id.* at 9−12.

Lipetzky also contends that Plaintiffs' Sixth Amendment claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on that claim would necessarily imply the invalidity of their convictions. Mot. at 12−13 (citing, *e.g.*, *Trimble v. City of Santa Rosa*, 49

7

F.3d 583 (9th Cir. 1995)).  Lipetzky further challenges the Sixth Amendment claim on the basis that the state court, not Lipetzky, set the length of the delay.  *Id.* at 13−14.

Lipetzky's motion concludes by briefly arguing that Plaintiffs' state law claims should be once again dismissed for lack of jurisdiction if she succeeds in dismissing the Sixth Amendment claim, and that if the Court reaches those claims, the Third Amended Complaint does not plausibly allege a violation of Plaintiffs' rights under state law.  *Id.* at 14−15.

### 2.  Opposition

Plaintiffs argue that their Sixth Amendment claim should not be dismissed for several reasons.  First, they contend that new allegations in the Third Amended Complaint—specifically, that Plaintiffs had a right to enter a plea at the first appearance—distinguish the case in its present form from what this Court and the Ninth Circuit previously considered, and render the first appearance a critical stage requiring counsel.  Opp'n (dkt. 98) at 5−6.  Next, they argue that the Ninth Circuit's instruction to consider whether counsel was appointed within a reasonable time after attachment, a mandate that Plaintiffs believe contemplates a facial challenge to the policy, requires examination of factual issues inappropriate for resolution at the pleading stage.  *Id.* at 6−11.  Plaintiffs also contend that they have adequately alleged facts supporting an as-applied challenged, because they allege that the delay in receiving counsel affected both Wade's and Farrow's ability to gather evidence.  *Id.* at 11−12.  As for Lipetzky's law of the case argument, Plaintiffs respond that the Ninth Circuit did not address whether the waiting period between appearances was a critical stage, and that this Court has not yet considered whether counsel was appointed within a reasonable time under the standard stated in the Ninth Circuit's decision.  *Id.* at 13−15.  Plaintiffs argue that the law of the case doctrine does not apply because the Ninth Circuit's decision constitutes intervening controlling authority, and because new allegations in the Third Amended Complaint require new analysis.  *Id.* at 15.

Turning to the *Heck* doctrine, Plaintiffs argue that their claims should proceed because *Heck* "does not apply to civil matters involving criminal defendants whose convictions and sentences rest upon guilty pleas—as they do in this case."  *Id.* (citing, *e.g.*, *Lockett v. Ericson*, 656 F.3d 892 (2011)).  Plaintiffs also argue that their claims do not implicate *Heck* because "this Court

has twice determined that there was no actual prejudice" to either Farrow or Wade, and the error was therefore harmless. *Id.* at 16. According to Plaintiffs, the cases that Lipetzky cites are not analogous because each involved a conviction at trial rather than a guilty plea. *Id.* at 16−17.

Responding to Lipetzky's argument that the court, rather than Lipetzky, determined the length of the delay, Plaintiffs contend that they have adequately alleged that the delay was caused by Lipetzky's policy, and that it is reasonable to infer that "the continuance between arraignment proceedings that Plaintiffs suffered could only occur upon agreement between the Public Defender and the Superior Court." *Id.* at 17−21.

Because Plaintiffs believe that the Sixth Amendment claim should go forward, they contend that the Court has supplemental jurisdiction over their state law claims. *Id.* at 21. Addressing the merits of those claims, Plaintiffs argue that they should be allowed to proceed on a claim under section 52.1 of the California Civil Code for interference with their speedy trial rights under section 859(b) of the California Penal Code, because although the policy did not actually violate those rights, it prevented Plaintiffs from exercising their rights to enter a plea at the first appearance, which would have started the clock on their speedy trial rights under section 859(b). *Id.* at 22. Plaintiffs also argue that Lipetzky's policy violated section 27706 of the California Government Code because that statute requires public defenders to represent indigent defendants "upon request . . . at all stages of the proceedings," Cal. Gov't Code § 27706, and Plaintiffs requested counsel at their first appearances—a "stage[] of the proceedings"—but did not receive counsel at that appearance. Opp'n at 23−24. Plaintiffs argue that had Lipetzky been present to represent Plaintiffs at their first appearances, she could have expedited the resolution of their cases. *Id.* at 24.

### 3. Reply

Lipetzky contends in her reply brief that claims based on the Sixth Amendment are evaluated either under *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that a person claiming ineffective assistance of counsel must show actual prejudice, or under *United States v. Cronic*, 466 U.S. 648 (1984), which held that prejudice can be presumed for certain structural denials of counsel. Reply (dkt. 101) at 1−3. According to Lipetzky, Plaintiffs have not

9

stated a *Strickland* claim because their Third Amended Complaint does not plausibly allege that either Farrow or Wade was actually prejudiced by the delay in appointing counsel. *Id.* at 8–10. She also argues that analysis of a *Cronic* claim depends only on whether counsel was denied during a critical stage, and that nothing in the Ninth Circuit's decision or Plaintiffs' Third Amended Complaint should alter the Court's conclusion that neither the first appearance nor the waiting period between appearances was a critical stage. *Id.* at 4–8. Lipetzky contends that the "only issue that the Ninth Circuit directed this Court to consider on the *Cronic* side of the ledger, which this Court did not previously consider, is whether the 'sometimes longer' allegation potentially results in a delay of constitutional import." *Id.* at 5. Because the parties have since stipulated that the Court may disregard that allegation, Lipetzky argues that the Court's prior holding should stand. *Id.*

Turning to the application of *Heck*, Lipetzky contends that *Heck* does, in fact, apply to cases where a conviction was based on a guilty plea rather than trial. *Id.* at 10 (citing *Radwan v. County of Orange*, 519 F. App'x 490, 490–91 (9th Cir. 2013)). Lipetzky also argues that Plaintiffs' "harmless error" argument is unavailing because a Sixth Amendment violation is not complete unless the criminal defendant is prejudiced—either under a *Cronic* claim for denial of counsel, where prejudice is presumed and reversal would be required per se, or under a *Strickland* claim for ineffective counsel, where the criminal defendant must demonstrate prejudice to prove a violation. *Id.* at 10 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006); *Smith v. McDonald*, 597 F. App'x 911, 913 (9th Cir. 2014)). Lipetzky asserts that the Ninth Circuit has never applied harmless error analysis to determine whether *Heck* bars a Sixth Amendment claim, and notes that several Ninth Circuit and district court decisions have dismissed such claims under *Heck* without considering whether the error was harmless. *Id.* at 11.

Lipetzky also continues to argue that the Sixth Amendment claim fails because the state court, not Lipetzky, set the date of the second appearance, and thus determined the length of the delay in appointing counsel. *Id.* at 12–13. As for the state law claims, Lipetzky argues that Plaintiffs have not alleged threats or coercion as required for a claim under the Bane Act, that they have conceded that their statutory speedy trial rights were not violated, and that Lipetzky complied

with her duties under section 27706 of the Government Code because her office represented Plaintiffs at all "stages of the proceedings" after they requested counsel. *Id.* at 13−14.

## III.    ANALYSIS

### A.    Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

11

**B.** *Heck v. Humphrey*

What has come to be known as the "*Heck* preclusion doctrine," "*Heck* bar," or "favorable-termination requirement" is based on the following paragraph in the Supreme Court's opinion in *Heck v. Humphrey*:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnotes omitted). The Ninth Circuit has explained that under *Heck*, "'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc)). Consequently, "the relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (quoting *Heck*, 512 U.S. at 487).

### 1. *Heck* and Guilty Pleas

Both parties here oversimplify the application of *Heck* to convictions obtained through plea agreements—Plaintiffs, by arguing that the doctrine "does not apply to civil matters involving criminal defendants whose convictions and sentences rest upon guilty pleas," Opp'n at 15 (citing *Lockett v. Ericson*, 656 F.3d 892, 896 (9th Cir. 2011); *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir.

2001)), and Lipetzky, by arguing only that "*Heck* does apply to individuals who plead guilty as opposed to being convicted by a jury," Reply at 10 (citing *Radwan v. County of Orange*, 519 F. App'x 490, 490–91 (9th Cir. 2013)). The parties' disagreement on this point reflects tension in the case law applying *Heck* in the context of guilty and no-contest pleas.[6]

Some Ninth Circuit decisions have applied *Heck* to no-contest pleas. In *Szajer v. City of Los Angeles*, the Ninth Circuit applied *Heck* to bar a § 1983 lawsuit alleging an unlawful search where the plaintiff had pled no contest to possession of an illegal assault weapon discovered during the disputed search, without explicitly discussing the issue of whether *Heck* applies to no-contest pleas. *Szajer*, 632 F.3d 607, 612 (9th Cir. 2011). More recently, the court in *Radwan* cited *Szajer* in support of its assertion that the Ninth Circuit "ha[s] repeatedly found Heck to bar § 1983 claims, even where the plaintiff's prior convictions were the result of guilty or no contest pleas." *Radwan*, 519 F. App'x at 490–91. Similarly, the court in *Chico Scrap Metal, Inc. v. Robinson* affirmed the district court's dismissal of § 1983 challenges to Department of Toxic Substances Control clean-up orders that were mandatory consequences of no-contest misdemeanor plea agreements. 560 F. App'x 650, 651 (9th Cir. 2014). While the Ninth Circuit in that case did not address the issue of no-contest pleas, the district court had rejected the plaintiffs' argument that *Heck* did not apply because their "state court conviction[s were] based on their nolo contendere pleas, not the legal validity of the DTSC orders" that they challenged in their § 1983 action. *Chico Scrap Metal, Inc. v. Raphael*, 830 F. Supp. 2d 966, 971 (E.D. Cal. 2011). The district court held that case to be "exactly the kind of action barred by *Heck*," despite the defendants' nolo contendere pleas. *Id.* at 972.

In *Lockett v. Ericson*, however, the Ninth Circuit held that *Heck* did not bar a § 1983 claim for unlawful search because the plaintiff pled no contest to the charge on which the defendants based their *Heck* preclusion argument. *Lockett*, 656 F.3d at 897. There, the plaintiff's neighbor reported the plaintiff for drunk driving after the plaintiff left his car off the side of the road. *Id.* at

---

[6] This Court has previously considered the application of *Heck* to convictions based on guilty and no-contest pleas in some detail in *Ellis v. Thomas*, 2015 WL 5915368 (N.D. Cal. Oct. 9, 2015), a case which neither party discusses in their briefs here. Portions of the explanation of relevant law below are drawn from *Ellis* without further citation.

13

894.  Investigating officers found the front door to the plaintiff's house ajar and entered the house. *Id.*  They woke the plaintiff and administered field sobriety tests, which the plaintiff failed.  *Id.*  After the trial court denied the plaintiff's motion to suppress the results of the sobriety test and other observations the officers made in the plaintiff's home, the plaintiff pled no contest to a "wet reckless" driving violation under California Vehicle Code section 23103.5(a).  *Id.* at 895.

The district court dismissed the plaintiff's § 1983 claim of unlawful search as barred by *Heck.  Id.* at 896.  The Ninth Circuit reversed, relying principally on *Ove v. Gwinn*, a case in which the Ninth Circuit held that *Heck* did not bar § 1983 plaintiffs who pled no contest to driving under the influence from bringing a § 1983 lawsuit alleging that investigators used unqualified individuals to withdraw blood for blood tests.  The court in *Lockett* reasoned that because the § 1983 plaintiff had pled no contest, his "conviction 'derive[d] from [his] plea[], not from [a] verdict[] obtained with supposedly illegal evidence.'"  656 F.3d at 896 (quoting *Ove*, 264 F.3d at 823) (all but first alteration in original).  Accordingly, success on the plaintiff's § 1983 claim would not imply the invalidity of the conviction because the "conviction d[id] not in any way depend on the legality of the search of his home."  *Id.* at 897 (internal quotation omitted).  *Ove*, on which *Lockett* relied, in turn relied on an example presented in *Heck* itself of a claim that would not be barred under the doctrine:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, *see Murray v. United States*, 487 U.S. 533, 539, 101 L. Ed. 2d 472, 108 S. Ct. 2529 (1988), and especially harmless error, *see Arizona v. Fulminante*, 499 U.S. 279, 307–308, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, *see Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308, 91 L. Ed. 2d 249, 106 S. Ct. 2537 (1986), which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Heck*, 512 U.S. at 487 n.7; *see also Ove*, 264 F.3d at 822 (quoting *Heck*).

The Ninth Circuit has since cited *Lockett* with approval.  *See Jackson v. Barnes*, 749 F.3d

14

755, 760 (9th Cir. 2014) (noting that in *Lockett*, "a plaintiff who pled *nolo contendre* [sic] to reckless driving was not *Heck*-barred from bringing a § 1983 claim based on an alleged unlawful search because the outcome of the claim had no bearing on the validity of the plaintiff's plea"), *cert. denied*, 135 S. Ct. 980 (2015). *Jackson* presents arguably a clearer case of harmless error than cases involving guilty pleas. There, plaintiff Frederick Jackson had initially been convicted of murder at a trial that included statements obtained in violation of the Fifth Amendment. *Id.* at 758–59. The Ninth Circuit reversed that conviction on habeas review in 2004, and Jackson was subsequently convicted again at a second trial that did not include the statements at issue. *Id.* at 759. Reviewing Jackson's § 1983 claim in 2014, the Ninth Circuit held that success on his civil claim for violation of the Fifth Amendment would have no bearing on his conviction at the second trial, and thus did not implicate *Heck*. *Id.* at 760–61.

Taken together, the precedent discussed above indicates that *Heck*'s inapplicability to certain cases involving guilty pleas is essentially an application of the harmless error exception first recognized in *Heck* itself, or more generally, the rule that success on a claim must *necessarily* imply the invalidity of the conviction in order to be barred by *Heck*. Where an alleged constitutional violation relates only to evidence that might or might not be admissible despite the error, might or might not be necessary to convict the defendant at trial, and regardless is not necessary for the defendant to enter a guilty plea, then a successful claim that the evidence was obtained in violation of the constitution would not necessarily imply the invalidity of the conviction. Accordingly, in considering whether *Heck* bars claims of other constitutional violations by defendants who have pled guilty to crimes, a court must look to what effect such a violation would necessarily have on the validity of the conviction.

In order to determine how *Heck*, *Lovett*, and the other authority discussed above apply to the present case, it is therefore necessary to understand the nature of the Sixth Amendment's guarantee of counsel—specifically, the circumstances in which violations of that right "would necessarily imply the invalidity of [a criminal defendant's] conviction or sentence." *See Heck*, 512 U.S. at 487.

## 2. Suitability of Harmless Error Analysis to Other Sixth Amendment Claims

As Lipetzky notes in her reply brief, courts recognize two types of *ineffective* assistance of counsel claims under the Sixth Amendment: claims under *Strickland v. Washington*, 466 U.S. 668 (1984), which require a showing of prejudice, and claims under *United States v. Cronic*, 466 U.S. 648 (1984), which involve circumstances "'circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified'" and prejudice may be presumed. *See Wright v. Van Patten*, 552 U.S. 120, 124–25 (2008) (per curiam) (discussing both standards and quoting *Cronic*, 466 U.S. at 658); *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (discussing both standards). Whether Plaintiffs' claim here for failure to appoint counsel at the required time is in fact an ineffective assistance claim, or is subject to the same rules as such claims, is discussed separately below.

Looking first to *Strickland*, the Supreme Court there held that a person claiming ineffective assistance of counsel must normally demonstrate likely prejudice as a result of his or her lawyer's error, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the years since *Strickland* was decided, courts have recognized that that its requirement of probable prejudice is not merely a question of standing or entitlement to relief, but instead a component of the constitutional violation itself: if counsel's errors were not so significant as to cast doubt on the outcome, counsel was not "ineffective" within the meaning of the Sixth Amendment guarantee. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) ("Counsel cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced."); *Mickens*, 535 U.S. at 166 ("[D]efects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation.").

In *Cronic*, decided the same day as *Strickland*, the Supreme Court declined to require a specific showing of probable prejudice in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S.

at 658. As the first example of one such circumstance, the Court stated that the "presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659; *see also id.* at 662 (considering whether the criminal defendant was denied counsel at "a critical stage of the prosecution"). Other examples include counsel's wholesale "fail[ure] to subject the prosecution's case to meaningful adversarial testing," *id.* at 659 (citing *Davis v. Alaska*, 415 U.S. 308 (1974)), and a court appointing an out-of-state lawyer—who was unwilling to represent the defendants due to his lack of time to prepare or knowledge of local procedure—on the day of trial to represent multiple defendants accused of capital crimes, *id.* at 659–60 (citing *Powell v. Alabama*, 287 U.S. 45 (1932)). The distinction that the *Cronic* Court drew between such circumstances and claims that would require a showing of probable prejudice under *Strickland* was not that no prejudice was required for a *Cronic* claim, but rather that likely prejudice could be presumed from the nature of the error or absence of counsel.

Of course, not every violation of the Sixth Amendment's assistance of counsel clause involves the right to effective assistance of counsel. In the separate context of a defendant's Sixth Amendment right to paid counsel of his or her choosing, the Supreme Court has held that harmless error analysis is not permissible. *Gonzalez-Lopez*, 548 U.S. at 152. The Court reasoned that the right to paid counsel of the defendant's choosing is a freestanding constitutional guarantee, independent of the defendant's right to a fair trial, and to subject a denial of that right to harmless error analysis would negate the right to *choose* counsel so long as a defendant received *competent* counsel. *Id.* at 147–48. Because the defendant's right is to counsel of his or her choice, not merely competent counsel, determining the effect of the denial of that right would require comparing all of the decisions that the preferred lawyer would have made throughout the trial to the decisions that the actual lawyer did make, not merely identifying errors by the actual lawyer. *Id.* at 150. Observing that "[i]t is impossible to know what different choices the rejected counsel would have made," the Court held that denial of counsel of choice is a structural error not subject to review for harmless error. *Id.*

Each of those types of claims—ineffective assistance demonstrated to be prejudicial under *Strickland*, structurally ineffective assistance under *Cronic*, and denial of counsel of choice under

1    *Gonzalez-Lopez*—would likely be barred by *Heck* if brought by a plaintiff who had been

2    convicted in the prosecution at issue, regardless of whether that conviction resulted from a guilty

3    plea. In the case of a *Strickland* claim, that result follows from the rule that "a violation of the

4    Sixth Amendment right to effective representation is not 'complete' until the defendant is

5    prejudiced." *See Gonzalez-Lopez*, 548 U.S. at 147 (discussing *Strickland* claims). Accordingly,

6    where a criminal defendant pled guilty, "the defendant must show that there is a reasonable

7    probability that, but for counsel's errors, he would not have pleaded guilty and would have

8    insisted on going to trial"; without such a showing, there is no violation of the Sixth Amendment.

9    *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A person asserting a *Strickland* claim therefore cannot

10   show that he or she was denied effective assistance of counsel without also necessarily implying

11   the invalidity of his or her conviction, even if it resulted from a guilty plea.[7] Essentially the same

12   analysis applies to a *Cronic* claim, except that likely prejudice need not be explicitly shown

13   because it can be inferred from the nature of the violation—even still, success on a *Cronic* claim

14   necessarily implies the invalidity of the conviction because the presumption arising from such a

15   violation "*requires* [a court] to conclude that a trial is unfair." *Cronic*, 466 U.S. at 659 (emphasis

16   added). And with respect to claims for violation of the right to choice of counsel, the Supreme

17   Court has held that a denial of that right is a structural error requiring reversal, with no occasion

18   for harmless error review. *See Gonzalez-Lopez*, 548 U.S. at 150, 152. In each of those contexts,

19   because a violation cannot be harmless, success on the claim would necessarily imply the

20   invalidity of a conviction, and thus implicate the *Heck* doctrine, regardless of whether the

21   conviction resulted from a guilty plea.

22         In other circumstances, however, the Supreme Court has held that a Sixth Amendment

23

24   ───────────────

     [7] Analysis of a *Strickland* claim might in some ways resemble harmless error review, because the
25   court must examine whether there is a reasonable probability that the attorney's error prejudiced
     the criminal defendant. The distinction here, however, is that if the attorney's error was harmless,
26   there was no constitutional violation. In other words, an actual violation of the Sixth Amendment
     under *Strickland* can never be harmless, because if it was, it would not be a violation. *See*
27   *Gonzalez-Lopez*, 548 U.S. at 147. The analysis is therefore distinguishable from, for example, a
     violation of the Fourth Amendment in the collection of evidence, which may be harmless to the
28   defendant's case—and thus no basis for reversal—but nevertheless remains a constitutional
     violation.

violation can constitute harmless error. One context where the Court has explicitly applied that doctrine is "where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial." *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988) (citing, *e.g.*, *Moore v. Illinois*, 434 U.S. 220 (1977); *Milton v. Wainwright*, 407 U.S. 371 (1972)); *see also United States v. Wade*, 388 U.S. 218, 236–37 (1967) (finding the absence of counsel at a post-indictment lineup involving witnesses who later made courtroom identifications to be harmless error, despite holding that the lineup "was a critical stage of the prosecution at which [the defendant] was 'as much entitled to such aid (of counsel) . . . as at the trial itself'" (citation omitted)). It would follow that where a Sixth Amendment violation only affected the procurement of evidence—for example, as in *Satterwhite*, where a defendant was not able to consult with counsel before undergoing a psychiatric evaluation—a defendant who pled guilty could in some cases bring a subsequent civil claim under § 1983 without implicating *Heck*, because showing such a violation would not necessarily imply the invalidity of his or her conviction. *Cf. Lockett*, 656 F.3d at 897 (holding that *Heck* does not bar a claim that a police search violated of the Fourth Amendment where a defendant pled guilty, and the evidence obtained from the search thus was not the basis for his conviction).

Also, in one decision issued fourteen years before *Cronic*'s explanation of the per se rule for denial of counsel at critical stages, the Supreme Court held that a preliminary hearing, as used in the Alabama courts, was a "critical stage" at which counsel was required, but that denial of counsel at that hearing was subject to harmless error review. *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970).

Plaintiffs here rely in part on the Ninth Circuit's decision in *Ayala v. Wong*, which adopted the Fourth Circuit's determination that the Supreme Court has used the phrase "critical stage" to mean two different things in the context of when a criminal defendant has the right to counsel as compared to in the context of when a deprivation of that right constitutes structural error. *Ayala*, 756 F.3d 656, 673 (9th Cir. 2013) (discussing *United States v. Owen*, 407 F.3d 222, 227 (4th Cir.

2005), *cert. denied*, 546 U.S. 1098 (2006)).[8] In other words, a proceeding might be a "critical stage" at which a defendant has the right to counsel, but might not be a "critical stage" such that failure to provide counsel warrants per se reversal without the need to specifically show probably prejudice. *See id.* The Supreme Court subsequently reversed *Ayala* on other grounds, without addressing the question of whether a "critical stage" for the right to counsel is necessarily also a "critical stage" for the purpose of finding structural error. *See generally Davis v. Ayala*, 135 S. Ct. 2187 (2015).[9]

Other decisions by the Ninth Circuit, however, have applied a per se rule to denial of counsel at a "critical stage" without indicating that a court must examine which type of "critical stage" applies to the case at hand. For example, the most recent published opinion on the subject suggests a clearer rule than that discussed in *Ayala*:

> Most trial errors are subject to harmless-error analysis. However, certain errors fall within the class of "structural defects in the constitution of the trial mechanism" that "defy analysis by 'harmless-error' standards." *Arizona v. Fulminante,* 499 U.S. 279, 309 (1991). "[T]he Sixth Amendment right to counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *United States v. Hamilton,* 391 F.3d 1066, 1070 (9th Cir. 2004) (quoting *Chapman v. California,* 386 U.S. 18, 23 & n. 5 (1967)). "[T]he absence of counsel during a critical stage of a criminal proceeding is precisely the type of 'structural defect' to which no harmless-error analysis can be applied." 391 F.3d at 1070 (citation omitted).

*United States v. Yamahiro*, 788 F.3d 1231, 1235–36 (9th Cir. 2015) (holding that absence of counsel at a victim allocution during the sentencing phase was structural error requiring per se reversal); *see also*, *e.g.*, *United States v. Benford*, 574 F.3d 1228, 1231−32 (9th Cir. 2009)

---

[8] Two other circuits have also adopted the reasoning of *Owen* or cited it with approval. *See Sweeney v. United States*, 766 F.3d 857, 861 n.3 (8th Cir. 2014); *Ditch v. Grace*, 479 F.3d 249, 255−56 (3d Cir. 2007)
[9] The Ninth Circuit also suggested that harmless error review is appropriate for denial of counsel at a critical stage in *United States v. Perez*, a case cited by Plaintiffs here, although its discussion of that issue is dicta in light of the holding that "there [was] no constitutional right for counsel to be present" at the initial appearance in question. *United States v. Perez*, 776 F.2d 797, 800 (9th Cir. 1985), *overruled on other grounds by United States v. Cabaccang*, 332 F.3d 622, 634−35 (9th Cir. 2003). *Perez* was decided just months after the Supreme Court issued its opinions in *Strickland* and *Cronic* and does not cite or acknowledge either of those decisions, instead relying on older authority such as *Coleman* in its discussion of harmless error. *See Perez*, 776 F.2d at 800.

("[A]lthough most ineffective assistance of counsel claims require courts to conduct a prejudice inquiry [under *Strickland*], a complete denial of counsel at a critical stage does not."); *Musladin v. Lamarque*, 555 F.3d 830, 837−38 (9th Cir. 2009) (holding that *Cronic*'s rule of automatic reversal where counsel is denied at a critical stage remains binding despite *Satterwhite* and *Fulminante*); *Hamilton*, 391 F.3d at 1071 (holding that the absence of counsel at a suppression hearing was structural error requiring per se reversal). Moreover, despite a number of relatively recent Supreme Court opinions recounting *Cronic*'s rule that denial of counsel at a critical stage is structural error—*e.g.*, *Wright*, 552 U.S. at 124−25; *Mickens*, 535 U.S. at 166—this Court is aware of no decision by the Supreme Court drawing any distinction between different types of critical stages in the manner of the Fourth and Ninth Circuit's *Owen* and *Ayala* decisions.

### 3. Application of *Heck* to Plaintiffs' Sixth Amendment Claim

The question here is how a claim for failure to appoint counsel to an indigent defendant at the required stage of the proceedings under *Rothgery* fits into the framework discussed above. The Ninth Circuit held on appeal that the Supreme Court set forth the appropriate standard for examining delay in appointment of counsel in *Rothgery*: "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Rothgery*, 554 U.S. at 212; *see Farrow*, 637 F. App'x at 988 (quoting *Rothgery*). The Court is not aware of any authority specifically considering whether failure to appoint counsel within the timeframe required by *Rothgery* is subject to harmless error analysis, or how *Heck* applies to such claims.[10]

Plaintiffs here present two arguments as to why the delay in appointing counsel violated their rights under the Sixth Amendment: (1) that the first appearance was a critical stage at which Plaintiffs were denied counsel; and (2) that even if the first appearance was not a critical stage, the delay in appointing counsel after attachment of the right at the first appearance was unreasonable. *See* TAC ¶ 57; Opp'n at 16. Plaintiffs argue that harmless error review is appropriate as to both

---

[10] *Rothgery* was itself a § 1983 case, but the criminal charges against the plaintiff had been dismissed after he was appointed counsel. *See Rothgery*, 554 U.S. at 196−97. The *Heck* doctrine therefore had no bearing on that case, because there was no underlying conviction or sentence at risk of being impliedly invalidated.

versions of their claim, and contend that they can therefore show a violation of the Sixth

Amendment and obtain nominal damages even if the error did not affect the outcome of their

prosecutions. *See* Opp'n at 16 & n.6. The Court addresses Plaintiffs' two theories of violation in

turn.

### a. Denial of Counsel at a Critical Stage

Fortunately, the case at hand does not require this Court to wade into the question of

whether different definitions of the term "critical stage" exist for different purposes, or, for that

matter, the precedential value of *Ayala* after its reversal on other grounds by the Supreme Court.

Even if some "critical stages" are not actually critical for the purpose of finding structural error,

the appearances at issue here are not among those exceptions.

The Ninth Circuit's decision in this case held that Plaintiffs' second court appearances

were critical stages "because the plaintiffs entered pleas at that hearing," although it affirmed the

Court's holding that the first appearance was not a critical stage. *Farrow*, 637 F. App'x at 988

(citing *White v. Maryland*, 373 U.S. 59, 60 (1963)). Plaintiffs now renew their argument that the

first appearance was also a critical stage,[11] based on a new allegation that Plaintiffs had the right

under California law to enter a plea at that hearing. *See* Opp'n at 5−6 (citing *Hamilton v.

Alabama*, 368 U.S. 52 (1961)). *Hamilton*, the case on which Plaintiffs rely, held that per se

reversal was warranted, without need to inquire into actual prejudice. 368 U.S. at 54. *White*, one

of the Supreme Court cases on which the Ninth Circuit relied here, similarly held that a hearing at

which a defendant entered a plea was a critical stage, and therefore "we do not stop to determine

---

[11] Plaintiffs argue in their opposition that the Court's previous conclusion that the waiting period between appearances was not itself a critical stage is not the "law of the case" because the Ninth Circuit did not address it, but Plaintiffs do not present any reason not previously argued why this Court should depart from its prior holding on that issue. *See* Opp'n at 12−15; Aug. 2013 Order at 25−26 (concluding that the waiting period was not itself a critical stage). Moreover, although Plaintiffs suggest that the Court *could* reconsider that issue, they state that "the question in this context is *not* whether the 5-to-13-day waiting period is a 'critical stage,'" but rather whether counsel was appointed within a reasonable time after attachment. Opp'n at 15 (emphasis added). The Court's analysis of whether Plaintiffs' can pursue a claim for lack of representation at a critical hearing is therefore limited to the first appearance, which Plaintiffs more clearly argue that the Court should reconsider in light of new allegations. *See id.* at 5−6 (subsection titled "The first Appearance in California Court is a 'Critical Stage' of the Proceedings as now pled" (capitalization as in original)).

whether prejudice resulted: . . . the judgment below must be and is reversed." *White*, 373 U.S. at 61 (citing *Hamilton*, 368 U.S. at 55).[12]  Accordingly, assuming for the sake of argument that Plaintiffs are correct that their first appearances were critical stages based on their rights to enter pleas, then *Hamilton*, *White*, and *Cronic* all indicate that failure to provide counsel at that appearance would be a structural error requiring per se reversal.  Success on this theory would necessarily imply the invalidity of Plaintiffs' convictions, and to the extent that Plaintiffs' § 1983 claim relies on that theory, it must therefore be dismissed under *Heck*.[13]

### b. Failure to Appoint Counsel Within a Reasonable Time

In addition to their contention that they were denied counsel at a critical stage, Plaintiffs also allege that their rights under the Sixth Amendment were violated by Lipetzky's failure to represent them within "a reasonable time []after" the first appearance.  TAC ¶ 57; Opp'n at 6–12.  The Ninth Circuit instructed this Court to reconsider that issue on remand in light of *Rothgery*'s rule that counsel must be appointed "within a 'reasonable time after attachment to allow for adequate representation at any critical stage.'"  *See Farrow*, 637 F. App'x at 988–89 (quoting *Rothgery*, 554 U.S. at 212)).  Discussing this Court's error in requiring a showing of actual prejudice, the Ninth Circuit noted Supreme Court precedent finding Sixth Amendment violations on the lesser showing of "'grave potential for prejudice'" or "absence of counsel that 'may affect the whole trial.'"  *Id.* (quoting *Wade*, 388 U.S. at 236; *Hamilton*, 368 U.S. at 54).

In a 1970 case where a criminal defendant was adequately represented at his first trial but did not meet with counsel regarding a second trial until "a few minutes before" it began, the Supreme Court affirmed a denial of habeas corpus, noting that it was "not disposed to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel."

_____

[12] In *People v. Cox*, a case cited in Plaintiffs' opposition, a California appellate court held that denial of counsel at an arraignment at which pleas were entered was subject to harmless error review by analogy to *Coleman*, which considered the separate issue of denial of counsel at a preliminary hearing where pleas were not entered or permitted to be entered.  *People v. Cox*, 193 Cal. App. 3d 1434, 1440 (1987); *see Coleman*, 399 U.S. at 26 (Stewart, J., dissenting).  This Court is not bound by California state court decisions on issues of federal law, and respectfully disagrees with *Cox* as inconsistent with *White* and *Hamilton*, if not also with *Cronic*.

[13] As a separate and sufficient basis for dismissal of this theory, the Court also holds that Plaintiffs have not shown any right under California law to enter pleas at their first court appearances, as discussed below in the context of Plaintiffs' Bane Act claim.

*Chambers v. Maroney*, 399 U.S. 42, 53−54 (1970). *Chambers* does not fully resolve the issue, because it is not clear whether the Court intended that delayed appointment of counsel in violation of the Sixth Amendment might not always be cause for reversal (which would suggest that *Heck* does not apply), or instead that not every delay in appointing counsel violates the Sixth Amendment (which would provide no guidance regarding the *Heck* issue). To the extent that it is relevant, though, and particularly given the likelihood that appointing counsel mere minutes before trial would violate the reasonableness standard articulated more recently in *Rothgery*, the *Chambers* decision suggests that a *Rothgery* violation does not require per se reversal of a conviction.

Moreover, in reversing this Court's previous order, the Ninth Circuit cited and relied on the Supreme Court's decision in *Wade*. *See Farrow*, 637 F. App'x at 988 (citing *Wade*, 388 U.S. at 236−37). In that case, the Supreme Court held that "there can be little doubt that for Wade the postindictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid (of counsel) * * * as at the trial itself,'" and that denial of counsel at the lineup therefore violated Wade's rights under the Sixth Amendment. *Wade*, 388 U.S. at 236−37 (quoting *Powell*, 287 U.S. at 57). The Court nevertheless reversed the Fifth Circuit's determination that the violation warranted a new trial. *Id.* at 239−43. The Supreme Court analyzed that violation in an evidentiary context, addressing the extent to which the uncounseled lineup identification tainted in-court identification by the same witnesses. *Wade*, 388 U.S. at 239–42. The Court remanded for the district court to hold a hearing "to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error." *Id.* at 242. Although the evidentiary context of *Wade* is not precisely analogous to the case at hand, *Wade* nevertheless indicates that Sixth Amendment violations based on failure to provide appointed counsel at times when a defendant is entitled to counsel do not *necessarily* invalidate a conviction. And while the Ninth Circuit here did not address that aspect of *Wade*'s holding, the Circuit's reliance on *Wade* tends to suggest that similar principles apply to this case.

The Court is not persuaded by Lipetzky's argument that the Ninth Circuit has asked this Court to analyze Plaintiffs' claims in "the *Strickland/Cronic* framework." *See, e.g.*, Reply at 3.

The panel's memorandum decision cites neither of those cases. *See generally Farrow*, 637 F. App'x 986. Moreover, it is not clear that the same standards apply to a case involving delayed appointment of counsel, like this case, as would apply to cases involving ineffective assistance of counsel, as in *Strickland* and *Cronic*. Here, the Ninth Circuit held that this Court erred in requiring Plaintiffs "to allege actual prejudice." *Id.* at 988. Although both *Strickland* and *Cronic* set forth standards of proof that require something less than an explicit showing of prejudice, that lesser burden is based on concerns regarding the feasibility and efficiency of proving prejudice by a preponderance of the evidence, not on a principle that prejudice is not required. *See Strickland*, 466 U.S. at 693−96 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."); *Cronic*, 466 U.S. at 658 ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."). In a more recent decision, the Supreme Court characterized *Strickland* as requiring "proof of both deficient performance *and prejudice* to the defense," and described *Cronic* as establishing circumstances in which prejudice can be presumed. *Bell v. Cone*, 535 U.S. 685, 696−97 (2002) (emphasis added). The Ninth Circuit's determination that prejudice is *not* required in this case, which is based on delayed appointment, is not consistent with the prejudice requirements that the Supreme Court set forth in *Strickland* and *Cronic*, which require a showing of prejudice at least by inference in cases based on ineffective assistance. Those cases therefore do not set the standard applicable here.

Taking into account *Wade*, *Chambers*, and the Ninth Circuit's instructions on appeal, the Court holds that success on a claim for failure to appoint counsel within a reasonable time after attachment would not *necessarily* imply the invalidity of Plaintiffs' convictions in state court. To the extent that Plaintiffs' § 1983 claim is based on that theory of violation of the Sixth Amendment, it is not barred by *Heck*.

## C.     Reasonableness of Delay

"The Supreme Court did not decide in *Rothgery* what constitutes a reasonable time to appoint counsel after attachment." *Clark v. State*, No. 03-09-00644-CR, 2011 WL 2651902, at *5

(Tex. Ct. App. July 8, 2011). Indeed, the *Rothgery* Court explicitly disclaimed any intent to define that standard:

> Our holding is narrow. We do not decide whether the 6–month delay in appointment of counsel resulted in prejudice to Rothgery's Sixth Amendment rights, and *have no occasion to consider what standards should apply in deciding this*. We merely reaffirm what we have held before and what an overwhelming majority of American jurisdictions understand in practice: a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.

*Rothgery*, 554 U.S. at 213 (emphasis added); *see also id.* at 212 n.15 ("We do not here purport to set out the scope of an individual's postattachment right to the presence of counsel. It is enough for present purposes to highlight that the enquiry into that right is a different one from the attachment analysis.")

In *Rothgery* itself, the parties reached a settlement agreement after the Supreme Court issued its decision, and no court in that case had reason to examine the issue further. *See* Agreed Stipulation of Dismissal with Prejudice, *Rothgery v. Gillespie County*, No. A-CV-456-LY, ECF Doc. No. 87 (W.D. Tex. Apr. 30, 2009). As noted in this Court's previous orders, a district court in Louisiana has considered this issue and held that a forty-day delay in appointing counsel was not constitutionally unreasonable, but that court used a standard of actual prejudice that the Ninth Circuit has now rejected. *See Grogen v. Gautreaux*, No. 12-0039-BAJ-DLD, 2012 U.S. Dist. LEXIS 120411, at *9−11 (M.D. La. July 11, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 120404 (M.D. La. Aug. 24, 2012). Also noted in this Court's previous orders, a district court in Texas determined "that [an] approximate two-month delay in receiving court-appointed counsel fails to rise to the level of a constitutional violation," but provided no analysis as to how it reached that decision. *See Hawkins v. Montague County*, No. 7:10-CV-19-O, 2010 WL 4514641, at *12 (N.D. Tex. Nov. 1, 2010). With the exception of *Grogen*, which is not consistent with the Ninth Circuit's decision here, this Court not aware of any decision articulating a standard by which to examine whether a delay in appointing counsel is reasonable within the meaning of *Rothgery*.

In the absence of such guidance, the Court holds for the purpose of the present motion that the reasonableness of a delay in appointing counsel after attachment depends on the totality of the circumstances, including the time needed to prepare for an upcoming critical stage—but not limited to that factor. To focus only on proximity to a critical stage would all but negate the significance of attachment, the importance of which the Supreme Court emphasized in *Rothgery*, where the Court acknowledged that "a defendant subject to accusation after initial appearance is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives." *Rothgery*, 554 U.S. at 210. Indeed, the facts of *Rothgery* illustrate the value of counsel even when a defendant does not face an impending adversarial proceeding: soon after appointment, counsel was able to secure a bail reduction for Walter Rothgery that allowed him to get out of jail. *Id.* at 196−97. Counsel thereafter demonstrated that Rothgery had never been convicted of a felony—a key predicate of the felon-in-possession charge that he faced—and the district attorney dismissed the indictment. *Id.* It is not clear from the *Rothgery* opinion that any critical stage of the proceeding was imminent, but that in no way diminishes the value of appointed counsel to protect Walter Rothgery's process and liberty interests after the right had attached.

The broad standard of reasonableness that the Court finds applicable does not lend itself to resolution on the pleadings. Plaintiffs' complaint here alleges that Lipetzky "arbitrarily withheld legal representation . . . for a period of 5 to 13 days" after the right attached—seven days in the case of Wade, and thirteen days in the case of Farrow. TAC ¶¶ 1, 29, 41. Nothing on the face of the complaint shows that delay to be reasonable. For the purpose of the present motion to dismiss, the Court holds that Plaintiffs have plausibly alleged that the delay was unreasonable, and therefore violated their Sixth Amendment rights to appointed counsel as articulated in *Rothgery*. To the extent that Plaintiffs' § 1983 claim is based on a theory of unreasonable delay after attachment, the motion to dismiss is DENIED.[14] Of course, if Plaintiffs prevail on this claim, their

---

[14] Lipetzky also argued that she cannot be held responsible for the state court's decisions regarding how long to continue Plaintiffs' arraignments, which, she contends, determined the delay in appointment. It is not clear why Lipetzky could not have provided counsel to Plaintiffs during the intervening period before the second hearing, after the court "referred the matter to the public

"compensable injury . . . does *not* encompass the 'injury' of being convicted [or] imprisoned."
*Heck*, 512 U.S. at 487 n.7.

### D.    State Law Claims

Because Plaintiffs may proceed on their federal claim, the Court's previous holding that it lacked jurisdiction over the related state law claims no longer stands.  Plaintiffs' two claims under California law are therefore discussed below.

### 1.  Civil Code Section 52.1

Section 52.1 of the California Civil Code, also known as the Bane Act, creates a right of action against any person who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or . . . of this state."  Cal. Civ. Code § 52.1(a) (defining the conduct prohibited); see also id. § 52.1(b) (creating private right of action).

Plaintiffs contend that Lipetzky colluded with the judges of the Contra Costa Superior Court to interfere with Plaintiffs' speedy trial rights under California law, including the right to a preliminary examination "within 10 court days of the date the defendant is arraigned or pleads, whichever occurs later."  Cal. Penal Code § 859b.  Plaintiffs do not dispute, however, that there was no actual violation of their rights under that law, because they have not alleged any improper delay after the entry of a plea at the further arraignment hearing.  *See* May 2013 Order at 27−28 (dismissing Plaintiffs' claim for violation of statutory speedy trial rights); Mot. at 14; Opp'n at 22.  Instead, Plaintiffs argue that by depriving Plaintiffs of their right to enter a plea at the first hearing, or conditioning that right on declining the Sixth Amendment right to appointed counsel, the process *interfered with* their right to set the speedy trial clock in motion.  *See* TAC ¶ 59; Opp'n at 22.  There are at least two problems with this theory.

---

defender."  Although Plaintiffs' allege that the written policy of the public defender's office called for staff to meet with criminal defendants while in custody before further arraignment, *see* TAC ¶ 4, they also allege that neither of them received counsel before their further arraignments, *id.* ¶¶ 27, 29, 36, 41.  *See also* Cal. Gov't Code § 27706 (providing that the public defender shall represent indigent defendants upon order of the court *or* "[u]pon request of the defendant."); *Joshua P. v. Superior Court*, 226 Cal. App. 4th 957, 963−64 (2014) (discussing the "upon request" prong of the statute and the fact that "appointment by the court [is] not required").

28

First, although Plaintiffs state in their present complaint that "California criminal defendants have an absolute right to enter a not-guilty plea at their first appearance in a California Court," TAC ¶ 6, they cite no authority so holding, and the Court need not accept legal conclusions as true in evaluating the sufficiency of a pleading. *Twombly*, 550 U.S. at 555. Section 988 of the California Penal Code, cited in Plaintiffs' opposition brief, *see* Opp'n at 5, states in part that an arraignment "consists in . . . asking the defendant whether the defendant pleads guilty or not guilty," but does not on its face prohibit the continued arraignment or "further arraignment" process employed here, where the court continued the portion of the arraignments at which Plaintiffs were asked for their pleas to their second court appearances. *See* Cal. Penal Code § 988.[15] Having not shown any right to enter a plea at the first appearance, Plaintiffs cannot proceed on the theory that denial of that opportunity impermissibly interfered with their right to set in motion the speedy trial rights premised on the entry of a plea.

Second, California court have held that "where coercion is inherent in the . . . violation [of rights] alleged," section 52.1 "requires a showing of coercion independent from the coercion inherent in the [violation] itself," because "the multiple references to violence or threats of violence in the statute serve to establish the unmistakable tenor of the conduct that section 52.1 is meant to address." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012). Here, Plaintiffs argue (but do not explicitly allege in their complaint) that "Sheriff [sic] deputies literally ordered these criminal detainees out of the courtroom and into the jail to await appointed counsel, which physically prevented them from entering a plea or asserting their statutory rights." Opp'n at 22. Even if Plaintiffs had alleged in their complaint that they received such orders from sheriff's deputies, the connection between those orders and the delay in Plaintiffs' opportunity to enter a plea is tenuous at best. The Bane Act requires interference with rights "*by* threat, intimidation, or coercion." Cal. Civ. Code § 52.1 (emphasis added). Here, the delay was caused by the judge's

---

[15] The practice guide also cited in Plaintiffs' brief—which in relevant part appears to describe typical procedures rather a defendant's procedural rights—is not a source of legal authority establishing rights under California law. *See* Opp'n at 5–6 (quoting Elena Condes, *Arraignment*, California Law and Procedure in Practice § 6.1 at 128 (CEB 2013) (stating that an arraignment includes the opportunity to enter a plea and "is the defendant's first court appearance)).

order continuing the arraignment, not by the deputies ordering Plaintiffs into custody during the intervening period; the same delay would have occurred if no deputies had been present and Plaintiffs had been free to leave the courtroom on their own recognizance. Plaintiffs' detention is not a component of the deprivation of rights that they have asserted. Plaintiffs therefore have not alleged a deprivation by coercion within the meaning of section 52.1.

The Court finds that leave to amend would be futile and GRANTS Lipetzky's motion to dismiss this claim with prejudice. The Court does not reach the question of whether the state court's decision of when to allow Plaintiffs to enter a plea can be attributed to Lipetzky based on the facts alleged.

### 2. Government Code Section 27706

Plaintiffs' final claims seeks a writ of mandate pursuant to sections 1085 and 1086 of the California Code of Civil Procedure to compel Lipetzky to comply with section 27706 of the California Government Code, which Plaintiffs contend requires her "to represent all indigent, in custody defendants by appearing at the first appearance of all indigent, in-custody criminal defendants, or at a reasonable time thereafter." TAC ¶ 62. Section 27706 reads in relevant part as follows:

> Upon request of the defendant or upon order of the court, the public defender shall defend, without expense to the defendant . . . any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior courts at all stages of the proceedings, including the preliminary examination. The public defender shall, upon request, give counsel and advice to such person about any charge against the person upon which the public defender is conducting the defense . . . .

Cal. Gov't Code § 27706(a). The parties devote minimal argument to this claim. *See* Mot. at 14−15; Opp'n at 23−24; Reply at 14. Lipetzky argues only that Plaintiffs have not alleged a breach of her duties under section 27706, and does not separately address whether a writ of mandate is appropriate under these circumstances.

Lipetzky contends, without citation to authority, that she "could not 'represent' Plaintiffs until such time as the state court appointed her office to do so, which occurred at the second appearance." Reply at 14. California law does not support that position:

The public defender is required by statute to determine whom to represent. Government Code section 27706, subdivision (a), provides that "[u]pon request of the defendant *or* upon order of the court, the public defender shall defend [indigent defendants.]" (Italics added.) . . . "In determining whether to provide the services of his office, the public defender 'exercises an original power vested in him by statute, not superior to but coequal with the power of the court' to determine whether a person is entitled to be represented by the public defender. [Citation.] The 'Upon request' condition of section 27706, subdivision (a), is an important alternative circumstance to formal court appointment to entitle a person to representation by the public defender and cannot be read out of the statute . . . ." (*In re Brindle* (1979) 91 Cal. App. 3d 660, 681 [154 Cal. Rptr. 563].) Not only is appointment by the court not required, the court "cannot challenge the public defender's decision that a person is entitled to be represented by him . . . ." (*Id.* at p. 681, 154 Cal. Rptr. 563.)

*Joshua P. v. Superior Court*, 226 Cal. App. 4th 957, 963–64 (2014) (alterations in original, except second brackets and second ellipsis). The failure of the state court to appoint counsel did not absolve Lipetzky of her duty under section 27706 to represent Plaintiffs after they requested counsel.

Lipetzky also argues that section 27706's description of the duty as applying to "all stages of the proceedings" acts as a limitation, and that because the state court continued the arraignments immediately after Plaintiffs requested counsel, no "stages" occurred before counsel was appointed at Plaintiffs' second court appearances. Reply at 14. The statute's phrasing of "all stages" is broader than the "critical stages" at which counsel is required under the Sixth Amendment, and its requirement that the public defender "give counsel and advice to such person about any charge" suggests that it contemplates more than merely appearance at court proceedings on the defendant's behalf. *See* Cal. Gov't Code § 27706(a). For the purpose of the present motion, the Court holds that section 27706's requirement that the public defender represent indigent defendants upon request or appointment is not limited to court appearances. This holding is without prejudice to either party presenting at a later stage of this litigation a more thorough argument regarding the nature and interpretation of section 27706.

The Court need not decide at this time whether section 27706 requires a public defender standing by at a defendant's first court appearance to provide representation immediately if requested, or whether the statute implicitly allows the public defender a reasonable period of time

to begin representation after request by an indigent defendant or appointment by the court. Assuming the latter for the sake of argument, the Court holds that Plaintiffs have plausibly alleged that the delay was unreasonable, as discussed above in the context of their Sixth Amendment claim. Lipetzky's motion to dismiss Plaintiffs' claim for a writ of mandate to enforce section 27706 is therefore DENIED.

## IV.    CONCLUSION

For the reasons discussed above, Lipetzky's motion is GRANTED as to Plaintiffs' claim under section 52.1 of the Civil Code, and as to Plaintiffs' § 1983 claim to the extent that it is based on a theory of failure to provide counsel at a critical stage. Those claims are DISMISSED without leave to amend. Lipetzky's motion is DENIED as to Plaintiffs' § 1983 claim to the extent that it is based on a theory of unreasonable delay in appointing counsel, and as to Plaintiffs' claim for a writ of mandate.

**IT IS SO ORDERED.**

Dated: April 28, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge